# SOUTHERN PACIFIC COMPANY *v.* CITY OF PORTLAND.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF OREGON.

No. 122.    Argued January 6, 1913.—Decided February 24, 1913.

Where, as in this case, a municipal ordinance, granting a franchise to use streets as authorized by the state law, expressly reserves to the city the power to make or alter regulations and to prohibit the use of a specified motive power, the grantee cannot accept it and afterwards claim that, as the state law only authorized the designation of streets, the municipality cannot exert the power reserved to prohibit the specified motive power without impairing the contract.

Although a municipality cannot defeat a grant made under authority of the State, it may under the police power reasonably regulate the method in which it shall be used; such regulations do not defeat the grant, if it is still practicable to operate under the new regulations. *Railroad Co.* v. *Richmond*, 96 U. S. 521.

The grantee of a franchise to use the streets coupled with conditions cannot avail of the benefits and deny the validity of the conditions, or claim that the exercise of the expressly reserved power is a violation of the contract clause of the Constitution.

Where under its reserved powers the municipality attempts to regulate a franchise to use the streets both as to nature of motive power and cars operated, the provisions are separable and do not stand or fall together. *Laclede Gas Co.* v. *Murphy*, 170 U. S. 99.

A franchise given by a municipality under state authority to a railroad to lay and operate tracks in a street includes the right to haul both passenger and freight cars, and a reserved power to regulate cannot be availed of to prohibit the hauling of freight cars and defeat the franchise given by the State and to that extent impair the contract under which the railroad was constructed.

While the power to regulate a franchise does not authorize a prohibition that destroys it, the municipality may legislate in the light of facts and conditions.

Whether subsequent regulations impair the obligation of a contract should only be determined on a complete record; and where, as in this case, all the conditions were not considered by the court of original jurisdiction the bill will be dismissed without prejudice.

The ordinance of Portland prohibiting the using of locomotives and hauling of freight cars on one of its streets occupied by a railroad under a franchise, *held* not to be an impairment of the contract as to the locomotives; but not decided on this record, whether it is an impairment as to the hauling of freight cars.

177 Fed. Rep. 958, affirmed.

APPEAL from a decree refusing to enjoin the City of Portland from enforcing an ordinance prohibiting the Southern Pacific Company from running steam locomotives or freight cars along Fourth Street.

It appeared that the Oregon Central R. R. was chartered to build a road from Portland to the California line. The company thereupon purchased a block of land in the city on which to locate its terminals and applied to the Council to designate the street on which the track should be laid. The general statute of the State then of force provided (Bellinger & Cotton's Code of Oregon, §§ 5077, 5078) that whenever a private corporation was authorized to appropriate any part of any public street within the limits of any town, such corporation should locate their road upon such particular street as the local authorities might designate. But if such local authorities refused to

make such designation within a reasonable time when requested, such corporation might make such appropriation without reference thereto.

The bill alleges that on January 6, 1869, "under and by virtue of the laws of the State and its charter then in effect," the City of Portland duly passed Ordinance 599, which provided that—

"Sec. 1. The Oregon Central Railroad Company, of Portland, Oregon, is hereby authorized and permitted to lay a railway track and run cars over the same along the center of Fourth Street, from the south boundary line of the City of Portland, to the north side of G Street, and as much further north as said Fourth Street may extend or be extended, upon the terms and conditions as hereinafter provided."

\*    \*    \*    \*    \*    \*    \*    \*

"Section 3. The Common Council reserve the right to make or to alter regulations at any time as they deem proper for the conduct of the said road within the limits of the city, and the speed of railway cars and locomotives within said limits, and may restrict or prohibit the running of locomotives at such time and in such manner as they may deem necessary."

\*    \*    \*    \*    \*    \*    \*    \*

"Section 5. It is hereby expressly provided that any refusal or neglect of the said Oregon Central Railroad Company to comply with the provisions and requirements of this ordinance, or any other ordinance passed in pursuance hereof, shall be deemed a forfeiture of the rights and privileges herein granted; and it shall be lawful for the Common Council to declare by ordinance, the forfeiture of the same, and to cause the said rails to be removed from said street."

The ordinance was accepted and the road was built from the terminals along Fourth to Sheridan Street, thence south over its private property and the right of way

granted by Congress (May 5, 1870, 16 Stat. 94, c. 69) to McMinnville. From its completion in 1871 to the present time freight and passenger cars drawn by steam locomotives have been constantly operated along Fourth Street. In 1903 the charter of the city of Portland was amended so as to authorize the granting of street franchises, and it is alleged that the city desired the railroad to take an electric franchise, paying therefor an annual sum. It is further charged that on May 1, 1907, over the protest of the Railroad Company, the Council passed Ordinance 16491, to go into effect eighteen months after date, by which it was made unlawful for the Oregon Central, its assigns, their lessees, or any other person to run or operate steam locomotives or freight cars along Fourth Street . . . between Glisan and the southerly limits of the city, excepting freight cars for the repair or maintenance of the railway lawfully and rightfully on said street. Violations were to be punished by fine or imprisonment and deemed a forfeiture of all rights claimed by the Oregon Central with respect to the operation of the railway on the street. On November 16, 1908, after the expiration of the eighteen months, a proceeding was instituted in the Municipal Court against the company and one of its agents, charging that he and it "did wilfully and unlawfully run and operate steam railway locomotives along Fourth Street" contrary to the provisions of Ordinance 16491.

The Southern Pacific, a Kentucky corporation, thereupon filed a bill in the United States Circuit Court, alleging that the Oregon Central's property had been transferred to the Oregon & California R. R. and that in 1887 the property and this street right had been leased to the Southern Pacific, which had since continuously operated freight and passenger cars with steam power over Fourth Street.

It averred that the railroad owned no other terminal

property than that purchased in 1869 and reached by the tracks on Fourth Street; that it was impossible to obtain any other terminal within the city accessible to the railroad from the intersection of Fourth and Sheridan Streets to the south boundary; that cars from Corvallis on its line running south could not be brought into the city and its business as a common carrier conducted if the ordinance was enforced, except by constructing, at an estimated cost of $911,000, about 10 miles of road from Beaverton to Willsburg, thence across a bridge owned by the Oregon R. R. & N. Co., and thence by the southern terminus of said railroad constructed by the Oregon Central. The bill charged that the ordinance imposed excessive penalties and illegal forfeitures; that it was arbitrary, unreasonable and oppressive; deprived the company of property without due process of law; interfered with interstate commerce, and impaired the obligation of the contract under which the track had been laid in Fourth Street.

The city answered denying that the Southern Pacific owned the property and franchises of the Oregon Central, on the ground that the latter company had no charter-right to sell and also offered evidence to show that when in 1869 the tracks were first laid on Fourth Street, there were very few buildings thereon, while it was now one of the principal thoroughfares upon which many stores, hotels and public structures have been erected; it proved that the locomotives and cars were much heavier than those in use when Ordinance 599 was passed and the grade being steep, the puffing, blowing, exhaust, noise and jar caused by steam locomotives was more disturbing and injurious than where the line is more nearly level. It also proved that the Southern Pacific was then building a Cut-off or Belt Line, by which freight could be carried around the city instead of being hauled over Fourth Street.

The court held that under the police power, as well as

that reserved in Ordinance 599, the city could prohibit the
use of steam and the hauling of freight cars, the ordinance
not being arbitrary in view of the results of hauling loco-
motives and cars along Fourth Street, which he found was
"quite steep, and the noise, vibration, smoke, cinders and
soot from the moving steam locomotive and train seriously
interfere with the transaction of public and private busi-
ness, and are a constant source of danger and inconven-
ience to the public." He made no finding as to whether
the company had other convenient and accessible means
of reaching the terminal, for handling through and local
freight. But having held that the city had power to pass
Ordinance 16491, he dismissed the bill, and the carrier
appealed.

*Mr. James E. Fenton,* with whom *Mr. Wm. D. Fenton,
Mr. Ben C. Dey, Mr. Kenneth L. Fenton* and *Mr. Maxwell
Evarts* were on the brief, for appellant:

The franchise or right granted the Oregon Central
Railroad Company to appropriate and use the portion of
Fourth Street designated in Ordinance No. 599, for the
purpose of constructing and operating its railroad thereon,
is a grant direct from the State and not from the city.
Dillon on Municipal Corporations, 5th ed., §§ 1228, 1230,
1242, 1265-9.

This franchise was granted by the State of Oregon under
the terms and provisions of §§ 24 and 25 of the act of the
Legislative Assembly of the State of Oregon, passed
October 14, 1862, which are now §§ 6841 and 6842 (Lord's
Oregon Laws).

The grant by the State of this franchise or right to ap-
propriate and use the part of Fourth street so designated
by Ordinance No. 599 when it was accepted and acted
upon by the railroad company and valuable improvements
made and money expended on the faith thereof, became a
contract between the State and the company which cannot

be impaired either by law of the State or by an ordinance of the city. *Mayor of Knoxville* v. *Africa*, 77 Fed. Rep. 501; Dillon on Municipal Corporations, 5th ed., § 1242.

The franchise granted by the State of Oregon to the Oregon Central Railroad Company was one in perpetuity. *Louisville Trust Co.* v. *Cincinnati*, 76 Fed. Rep. 296; *Louisville* v. *Cumberland Tel. Co.*, 224 U. S. 649, 662; *Blair* v. *Chicago*, 201 U. S. 400; *Detroit Citizens' Street Ry.* v. *Detroit Ry.*, 171 U. S. 48; *St. Clair Turnpike County* v. *Illinois*, 96 U. S. 63; *Vilas* v. *Manila*, 220 U. S. 345; 3 Dillon Mun. Corp., §§ 1265–1269.

This franchise being a vested property right can be assigned, mortgaged or leased as other property. *Oregon Ry. & Navig. Co.* v. *Oregonian Ry. Co., Ltd.*, 130 U. S. 1.

Ordinance No. 16491 is not within any power reserved to the city by Ordinance No. 599; nor is it a reasonable or necessary exercise of any police power of the State or city regulating the use of the railroad on Fourth street with a view to the public welfare. *Railroad Co.* v. *Richmond*, 67 Virginia, 83; *S. C.*, 96 U. S. 521.

Ordinance No. 16491 is unreasonable and oppressive and as such operates to defeat the purposes of the grant from the State, and it is void in that—

It impairs the obligation of the contract under which the street was appropriated by the company and under which it located and operated its road thereon.

It deprives the company of its property—said franchise—without due process of law and denies it the equal protection of the laws.

Its enforcement will interfere with, restrain, and prevent the movement by the company of interstate commerce.

Even if it be conceded that the city could, under the police power, prohibit the use of steam locomotives on Fourth street, it could not, as it attempted to do under Ordinance No. 16491, deprive the company of its right,

under reasonable- regulations, to move its freight trains at some time during the twenty-four hours. Such a prohibition is a taking of the property of complainant, under the guise of the exercise of the police power; it is not regulation, it is confiscation. *Wisconsin Tel. Co.* v. *Sheboygan,* 111 Wisconsin, 23, 36; *Wisconsin Tel. Co.* v. *Oshkosh,* 62 Wisconsin, 32, 40; *Am. Un. Tel. Co.* v. *Harrison,* 31 N. J. Eq. 627; *Summit* v. *N. Y. & N. J. Tel. Co.,* 57 N. J. Eq. 123, 127; *New Hope Tel. Co.* v. *Concordia,* 106 Pac. Rep. 35; *Missouri Tel. Co.* v. *Mitchell,* 22 So. Dak. 191; *Michigan Tel. Co.* v. *Benton Harbor,* 121 Michigan, 512; *Telephone Co.* v. *St. Joseph,* 121 Michigan, 502, 506; *Jonesville* v. *Southern Michigan Tel. Co.,* 155 Michigan, 86; *Carthage* v. *Cent. N. Y. Tel. Co.,* 185 N. Y. 448; *Northwestern Tel. Exchange* v. *Minneapolis,* 81 Minnesota, 140; 3 Dillon on Mun. Corp., 5th ed., §§ 1230, 1269; *Street Ry. Co.* v. *Asheville,* 109 No. Car. 688; *Traction Co.* v. *Shreveport,* 122 Louisiana, 1.

If Ordinance No. 16491 be invalid in respect to the prohibition against the movement of freight traffic, then the entire ordinance is void. It is a fundamental rule that if part of an ordinance is void, another essential and connected part of the same is also void. *State* v. *Hoboken,* 38 N. J. L. 110; *United States* v. *Ju Toy,* 198 U. S. 253, 262; *Illinois Cent. R. Co.* v. *McKendree,* 203 U. S. 514, 529.

*Mr. Frank S. Grant,* with whom *Mr. Lyman E. Latourette* was on the brief, for appellee:

The original ordinance, reserves to the city the right to make such rules and regulations, even to the extent of prohibiting the use of steam locomotives or freight cars on Fourth Street. *Railroad Co.* v. *Richmond,* 96 U. S. 521; *Buffalo &c. Ry. Co.* v. *Buffalo,* 5 Hill (N. Y.), 209; McQuillan on Ordinances, 2d ed., § 763; Nellis on St. Railways, § 46; *Pacific Railroad Co.* v. *Leavenworth,* Fed.

Cas. No. 10649; *Pac. &c. Ry.* v. *Hood,* 94 Fed. Rep. 618;
*Railroad* v. *Bingham,* 87 Tennessee, 522; *Louisville T. Co.*
v. *City,* 76 Fed. Rep. 296; *S. C.,* 78 Fed. Rep. 307; 3
Dillon on Municipal Corporations, 5th ed., § 1229, p. 1952;
*Clinton* v. *Worcester,* 199 Massachusetts, 279; *Rutherford*
v. *Hudson R. T. Co.,* 73 N. J. L. 227; *McQuaid* v. *Port-
land Ry. Co.,* 18 Oregon, 248; Art. II, § 4, Const. Ore-
gon.

The original ordinance was necessarily made and ac-
cepted subject to the city's right to the exercise of its
police power. The power to make such regulations con-
cerning the operation of the plaintiff's road as public
safety and welfare might, from time to time, require can-
not be contracted away. *Northern Pacific Railway* v.
*Duluth,* 208 U. S. 583; Joyce on Franchises, § 138; *Ex
parte Koehler,* 23 Fed. Rep. 529; *P. Ry. L. & P. Co.* v.
*Railroad Commission,* 105 Pac. Rep. 713; Constitution
Oregon, Art. II, § 2; *Fertilizing Co.* v. *Hyde Park,* 97
U. S. 663; *North Chicago &c.* v. *Lakeview,* 105 Illinois,
207; *Buffalo &c. Ry. Co.* v. *City of Buffalo,* 5 Hill (N. Y.),
209; *Brown* v. *City,* 47 Pa. St. 329; 2 Elliott on Roads,
3d ed., § 839; *Municipal Paving Co.* v. *Donovan,* 142
S. W. Rep. 644; *Macomb* v. *Jones,* 158 Ill. App. 271;
*Hennington* v. *Georgia,* 163 U. S. 299; *Baltimore* v. *Balti-
more T. Co.,* 166 U. S. 673; *Portland Ry. L. & P. Co.* v.
*Portland,* Fed. Rep. (decided Nov. 1912, not reported);
*Beer* v. *Massachusetts,* 97 U. S. 25; *Mugler* v. *Kansas,* 123
U. S. 623; *N. Y. & N. E. R. R.* v. *Bristol,* 151 U. S. 567;
*New Orleans Gas Co.* v. *Louisiana Light Co.,* 115 U. S. 60;
*Budd* v. *New York,* 143 U. S. 517; *C., B. & Q. R. R.* v.
*Chicago,* 166 U. S. 226; *Detroit Railroad Co.* v. *Osborne,* 189
U. S. 383; *New Orleans Gas Light Co.* v. *Drainage Commis-
sioners,* 197 U. S. 453; *C., B. & Q. R. R. Co.* v. *Illinois,* 200
U. S. 561; *Union Bridge Co.* v. *United States,* 204 U. S. 364;
Cooley on Const. Lim., 7th ed., p. 400; 9 Enc. of U. S.
Sup. Ct. Reports, 494; *Stone* v. *Mississippi,* 101 U. S. 814,

817; *Butchers' Union* v. *Crescent City Co.*, 111 U. S. 748; *Slaughter House Cases*, 16 Wall. 36, 62; *Boyd* v. *Alabama*, 94 U. S. 645; *Douglas* v. *Kentucky*, 168 U. S. 488; *Railway Co.* v. *People*, 201 U. S. 506; *Portland* v. *Cook*, 48 Oregon, 550, 555; *Portland* v. *Meyer*, 32 Oregon, 368, 371; *State* v. *Muller*, 48 Oregon, 252, 255; affirmed *Muller* v. *Oregon*, 208 U. S. 412; *St. Louis & S. F. Ry. Co.* v. *Mathews*, 165 U. S. 1; *Providence Bank* v. *Billings*, 4 Pet. 514; *Railroad Comm. Cases*, 116 U. S. 307, 325; *Vicksburg S. & P. R. Co.* v. *Dennis*, 116 U. S. 665; *Water Co.* v. *Freeport*, 180 U. S. 587, 611; *Stanislaus Co.* v. *San Joaquin Canal Co.*, 192 U. S. 201; *Metropolitan Street Ry. Co.* v. *New York*, 199 U. S. 1; *Water, Light & Gas Co.* v. *Hutchinson*, 207 U. S. 385; *Home Tel. & Tel. Co.* v. *Los Angeles*, 211 U. S. 273.

The ordinance prohibiting the use of steam locomotives on Fourth Street does not deny the plaintiff in error the equal protection of the laws, although it alone is named in the ordinance, where no other person or corporation has the right to run engines in that street, as is the case at bar. *Richmond F. & P. R. Co.* v. *Richmond*, 96 U. S. 521.

The appropriate regulation of the use of property is not "taking it," within the meaning of the constitutional prohibition against the deprivation of property without due process of law. *Richmond F. & P. R. Co.* v. *Richmond*, 96 U. S. 521; *Pittsburg, C. & St. L. R. Co.* v. *Hood*, 36 C. C. A. 428; 94 Fed. Rep. 624.

The ordinance complained of, prohibiting the use of steam locomotives on Fourth Street, does not impair any vested rights of the plaintiff in error under its charter. *Richmond F. & P. R. Co.* v. *Richmond*, 96 U. S. 521.

The charter of the City of Portland in force when the ordinance was passed contains a provision giving the council power to exercise all the police powers to the same extent as the State could exercise said power within said limits. Under this power the council has authority to

regulate the running of railroad cars within the city limits and to prohibit their propulsion by steam. *Richmond F. & P. R. Co.* v. *Richmond,* 96 U. S. 521; *Buffalo & N. F. R. Co.* v. *Buffalo,* 5 Hill (N. Y.), 209; Dillon on Mun. Corp. (5th ed.), § 65.

Municipal corporations are *prima facie* the sole judges respecting the necessity and reasonableness of their ordinances. McQuillin on Mun. Ord., 2d ed., § 731, p. 1586; *Greensboro* v. *Ehrenreich,* 80 Alabama, 579; *Van Hook* v. *Selma,* 70 Alabama, 361; *Ex parte Delaney,* 43 California, 478; *Louisville* v. *Roupe,* 6 B. Mon. (Ky.) 591; *Spriggs* v. *Garrett Park,* 89 Maryland, 406; *Commonwealth* v. *Patch,* 97 Massachusetts, 221; *Lamar* v. *Weidman,* 57 Mo. App. 507; *Hannibal* v. *M. & K. Tel. Co.,* 31 Mo. App. 23; *Budd* v. *Camden,* 69 N. J. L. 193; *Union Oil Co.* v. *Portland,* 198 Fed. Rep. 441; *Dobbins* v. *Los Angeles,* 195 U. S. 223.

The legal presumption is in their favor, unless the contrary appears on their face or is established by proper evidence. McQuillan on Mun. Ord., 2d ed., § 731, p. 1587; *Union Oil Co.* v. *Portland,* 198 Fed. Rep. 441.

When a privilege or a franchise is granted containing the reserved power to alter, amend or repeal, whenever the public interest may require, no question as to the impairment of the obligation of the contract can arise when additional burdens are imposed. *Northern Pacific* v. *Duluth,* 208 U. S. 583; *Sioux City Street Ry. Co.* v. *Sioux City,* 138 U. S. 98; 1 Nellis on Street Railways, § 46.

A municipal corporation has no power to grant a franchise in perpetuity without express statutory authority from the legislature. *Joseph* v. *Water Co.,* 57 Oregon, 586; *Artesian Water Co.* v. *Boise City,* 123 Fed. Rep. 232; 186 Fed. Rep. 705; *Logansport Railway Co.* v. *City,* 114 Fed. Rep. 688; *Citizens' St. Ry.* v. *Detroit,* 171 U. S. 48; Nellis on Street Railways, § 46; 2 Elliott on Roads, § 1048; *Lake Rowland* v. *Baltimore,* 77 Maryland, 352; *Belleville* v.

*Citizens' R. R. Co.*, 152 Illinois, 171; *McQuaid* v. *Portland Ry. Co.*, 18 Oregon, 237; *Water Co.* v. *Cedar Rapids*, 118 Iowa, 234; 28 Cyc. 655, 875; Cooley's Const. Lim., 6th ed., 251; *Brenham* v. *Water Co.*, 67 Texas, 542; *Illinois Trust Co.* v. *Arkansas City Water Co.*, 76 Fed. Rep. 196; *Birmingham St. Ry. Co.* v. *Birmingham*, 79 Alabama, 472; *Water Works Co.* v. *Huron* (S. D.), 12 Am. R. R. & Corp. Rep. 398; *Water Company* v. *Westminster*, 98 Maryland, 551.

A contract beyond the power of the city is void *ab initio*. *State* v. *Minnesota Ry. Co.*, 80 Minnesota, 108; *Flynn* v. *Little Falls Elec. Co.*, 74 Minnesota, 180.

The city was vested with the right and power at the time ordinance 599 was passed to designate the street upon which the railroad could locate its road, and this right carried with it the power to impose reasonable conditions to such grant or permission which, when accepted by the grantee, became binding on it. *Pittsburg &c. Ry. Co.* v. *Hood*, 94 Fed. Rep. 618; *Southern Bell Tel. Co.* v. *Mobile*, 162 Fed. Rep. 523; *Mercantile Trust Co.* v. *Collins Park & B. R. Co.*, 101 Fed. Rep. 347; *Pacific Ry. Co.* v. *Leavenworth*, Fed. Cas. No. 10649; *Michigan Tel. Co.* v. *City*, 93 Fed. Rep. 11; *Pittsburg, C. & St. L. Ry. Co.* v. *Hood*, 94 Fed. Rep. 618.

Prohibition of steam power, under Ordinance No. 16491, does not prevent employment of electricity as a motive power. Booth on St. Railways, § 68, 2d ed.

The ordinance does not in any manner constitute an interference with interstate commerce. *Smith* v. *Alabama*, 121 U. S. 465.

Municipal corporations are *prima facie* the sole judges respecting the necessity and reasonableness of their ordinances, subject to the supervision of the courts. 2 McQuillan on Ordinances, 2d. ed, §§ 731, 732; *Union Oil Co.* v. *Portland*, 198 Fed. Rep. 441; *Holden* v. *Hardy*, 169 U. S. 366; *Dobbins* v. *Los Angeles*, 195 U. S. 223.

Any doubt or ambiguity in the ordinances must be resolved against appellant.  19 Cyc. 1459; *O. R. & N. Co. v. Ore. Ry. Co.*, 130 U. S. 1, 26; *Mayor v. Farmers' L. & T. Co.*, 143 Fed. Rep. 67, 71; *City v. Helena W. Wks.*, 122 Fed. Rep. 1, 14; *Oregon v. Pac. Gen. Elec. Co.*, 52 Oregon, 343; *Joseph v. Water Co.*, 57 Oregon, 586; *Water Co. v. Freeport*, 180 U. S. 587; *Burns v. Multnomah Ry. Co.*, 15 Fed. Rep. 177.

A right granted in the nature of a franchise, to be exercised for a public purpose, cannot be assigned or leased without legislative authority.  *Oregon v. P. G. E. Co.*, 52 Oregon, 521; *Oregon Ry. Co. v. Oregonian Ry. Co.*, 130 U. S. 1.

MR. JUSTICE LAMAR delivered the opinion of the court.

The bill alleged that by virtue of the laws of the State and its charter the City of Portland passed Ordinance 599 permitting cars to be run along Fourth Street.  That ordinance reserved the right "to make and alter regulations" and to "prohibit the running of locomotives." And as the court held that this reserve power authorized the city to prohibit the use of steam, the appellant,—though originally contending that Ordinance 599 was valid and constituted a contract which could not be impaired—now insists that under the law of force in 1869 the city could only "designate" the street on which tracks could be located and could not, by reservation, give itself power to prohibit the use of steam or the hauling of freight cars, nor could it provide for municipal forfeiture of a state franchise.

1. Under the Oregon Code (§§ 5077, 5078) the power to designate the street on which railroad tracks could be located was equivalent to the power to consent to the use of that street.  The city was not limited to merely naming the thoroughfare or giving or refusing its consent.  But—

provided they did not defeat the state franchise—could
fix terms and reserve powers beyond those otherwise
possessed by it as a municipality. The specific conditions
and general powers reserved in § 3 of Ordinance 599 were
not inconsistent with the grant from the State, and when,
with such reservation, it was accepted by the company,
it became contractual as well as legislative. The railroad
could not rely on it for the purpose of laying the tracks
and then deny the validity of such conditions. The
Ordinance was proposed and accepted as an entire con-
tract and, as such, was binding on the railroad as well as
on the city. The power therein reserved "to make regu-
lations" coupled with the right "to prohibit the running
of locomotives at such time and in such manner as the
city might deem necessary," authorized the city to pro-
hibit the use of steam locomotives. This did not defeat
the grant, inasmuch as it was permissible and practicable
to use electricity, gasoline or other motive power free
from noise and vibration—increased here above the
ordinary when steam was used on a grade said to be one
of the steepest, if not the steepest, in the State. The case
is like *Richmond, F. & P. R. Co.* v. *Richmond,* 96 U. S.
521, where, under a somewhat similar ordinance, it was
held that the city might provide that no car or engine
could be drawn or propelled by steam along certain parts
of the highway.

2. The appellant insists, however, that even if the city
can regulate the motive power, it cannot prohibit the
hauling of freight cars, and that the invalidity of this
provision and that forfeiting the franchise renders the
whole Ordinance 16491 void. In reply it is contended
that even if there were no other route than Fourth Street
by which to reach the terminals, it might be necessary for
the railroad to establish a freight depot in another part of
the city and make transfers by other vehicles, rather than
to continue to haul freight cars through Fourth Street;

but that, in any event, the "entire ordinance would not be void if that portion relating to freight trains were found to be invalid."

The provisions relating to motive power, prohibiting the hauling of freight cars and declaring a forfeiture for a violation of the ordinance are so far separable that they do not necessarily stand or fall together and, therefore, the regulation against the use of steam can be enforced without regard to the validity of the prohibition against hauling freight cars. *Laclede Gas Light Co.* v. *Murphy,* 170 U. S. 78, 99.

3. Even if the city could have contracted for the right to revoke the State's franchise, the council did not attempt to reserve a power to repeal but only that it might make and alter regulations, and Ordinance 16491, whether treated as an exercise of the general police or special reserve power, recognized that the carrier might use electricity to haul passenger cars. There is nothing in that ordinance or in this record which indicates that there is any difference in result in the operation of the two classes of cars, or that the company has less right to haul one than the other. The lessee, and its assignors, as common carriers were charged with the duty of operating both, and Ordinance 599 in permitting a railway track to be laid in Fourth Street expressly authorized cars to be run thereon. Manifestly that gave the right to the company to transport freight as well as passengers. But if the city can prohibit the company from operating one set of cars it can prevent the use of the other, and under the power to regulate it could thus defeat the franchise granted by the State of Oregon and impair the contract under which the tracks were located and on the faith of which the terminals were constructed.

But while the power to regulate does not authorize the city to prohibit the use of the tracks in hauling freight cars, it may legislate in the light of facts and conditions

which would make restrictions reasonable and valid regulations. The extent of the power of the city and the rights of the company, however, ought not to be finally adjudicated on this record. For while the ordinance was attacked as a whole and there was some testimony that it would be possible to reach the terminals over other railways and by means of a Belt Line then being constructed for handling through freight, but not finished, yet the evidence was directed to the injurious consequences resulting from the use of steam and not from hauling cars. The bill was filed primarily to enjoin the city from prosecuting the company for running a steam locomotive. In sustaining the ordinance as a whole the court called attention to the fact that the street was quite steep throughout the business district, and the noise, vibration, cinders and soot from the moving steam locomotive and train seriously interfered with the transaction of business and were a source of danger and inconvenience to the public. But nothing appears to show that the noise or danger would be different in character or result from that caused by the running of other electric cars or that there was any reason why freight cars should be prohibited when passenger cars were permitted to be run. The city has the undoubted right to make regulations as to cars used in the transportation of local freight to and from the terminal. If, as claimed, the Belt Line, when completed, will afford convenient and accessible means of handling through cars without the necessity of going through Fourth Street, that fact may be given the weight to which it is entitled when regulations are made. But those issues were not clearly raised nor specifically ruled on by the lower court, and the city has neither attempted to prosecute for hauling freight cars nor attempted to enforce a forfeiture. These questions ought not to be determined here until such issues have been more definitely considered by the court of original jurisdiction. Without

prejudice to the right of either when such questions arise, the refusal to enjoin the prosecution for running a steam locomotive and the order entering a decree dismissing the bill must be

*Affirmed.*

Mr. Justice Hughes and Mr. Justice Pitney concur in the result.