Argued February 9, affirmed March 30, 1955

# SOUTHERN PACIFIC COMPANY *v.*
# CONSOLIDATED FREIGHTWAYS, INC.

281 P. 2d 693

658

*William C. Ralston,* Portland, argued the cause for appellant. With him on the briefs were Phillips, Hodler & Sandeberg, Portland.

*Wayne Hilliard,* Portland, argued the cause for respondent. With him on the briefs were Koerner, Young, McColloch & Dezendorf and John Gordon Gearin, Portland.

Before WARNER, Chief Justice, and ROSSMAN, TOOZE and PERRY, Justices.

WARNER, C. J.

This is an action for the recovery of damages sustained by the Southern Pacific Company (plaintiff-respondent) by reason of a collision between a freight train of the railway company and a truck and trailer operated by Consolidated Freightways, Inc. (defendant-appellant). The accident occurred on June 14, 1951, about 11 p.m. near the north line of the intersection of 12th and State streets in Salem, Oregon. Shortly before the accident occurred, the truck was moving north on 12th street some distance south of State street. When it reached the south line of State street, it came to a short stop before entering the intersection directly ahead of plaintiff's oncoming freight train. The right-hand wheels of the truck were upon or a few inches from the west rails of the railroad track. While in this position, the truck was almost immediately overtaken by plaintiff's train. From a judgment predicated upon a jury verdict in favor of plaintiff in the amount of $665, the defendant appeals.

The railroad company charged that the truck company was negligent in not having its truck under control, in failing to keep a proper lookout, in failing to heed the warning signals, in driving its truck on re-

spondent's main tracks and in failing to yield the right of way. The principal defense of the truck company's answer rested on a claim that the train was moving at an excessive speed, contrary to Salem ordinances.

Appellant's first assignment of error claims that the court erred in striking paragraph IV of its answer. This paragraph alleged that ordinance No. 2566 of the city of Salem, approved August 6, 1929, was in full force and effect at the time of the accident and was, therefore, controlling on the subject of the speed of the train. The ordinance established a maximum speed of 20 miles per hour for locomotives and trains within the city limits of Salem. The truck company apparently depended upon the existence of this ordinance to support its further allegation that plaintiff "operated its said freight train at an imprudent, reckless, and dangerous speed in excess of twenty (20) miles per hour." We think there is no merit in this assignment, for the reasons that follow.

Ordinance 2566 of the city of Salem, upon which appellant relies as controlling the speed of respondent's train, is met by respondent's representation that the power to regulate the speed of trains, delegated to the city of Salem by its legislatively-conferred charter of February 15, 1893 (Charter of the City of Salem, Oregon Laws 1893, p. 634, § 6, subd. 31), was thereafter repealed by ch 86, Oregon Laws 1947 (ORS 760.050).

Appellant relies solely upon *Southern P. Co. v. Portland*, 227 US 559, 57 L ed 642, 33 SC 308, as authority for the proposition that notwithstanding the act of 1947, Salem ordinance 2566 was a valid and existing exercise of the city police powers at the time of the accident. It is not exactly clear to us from appellant's argument just what it precisely claims for the cited case. We infer that it is urged in support of an

impression that the city of Salem has an inherent or irrevocable right and duty to regulate traffic and speed of vehicles on its streets and that such power is of a kind and quality beyond the reach of legislative control or repeal.

Perhaps we speculate when we suggest that appellant finds support for its idea in that part of the opinion reading, "The city has the undoubted right to make regulations as to cars used in the transportation of local freight to and from the terminal." (227 US 574) However, whether this or other statements from the case are relied upon to bolster appellant's claim, we find in that case no comfort for the truck company's position, nor facts or circumstances remotely comparable to the subsisting relationship between the city and state with reference to the respective power of either the city or the state to regulate the speed of railway carriers in city streets. The "undoubted right to make regulations as to cars * * *",
as stated by the court in the federal case, referred to a right which the city of Portland reserved to itself in 1869 when it passed an ordinance granting the predecessor of the plaintiff in this case the right to operate its cars on portions of 4th street. This right was exercised by the city pursuant to a legislative grant by the state (Bellinger & Cotton's code, §§ 5077, 5078). Subsequently in 1907 the city of Portland passed another ordinance which had the effect of exercising some of the regulatory powers which it reserved under the earlier ordinance of 1869.

The question before the court in the federal case was whether the city was properly exercising such reserved powers of regulation. The "undoubted right" of the city to make the regulation of 1907 was in reference to the powers it had earlier reserved to itself, and

not to inherent powers or powers delegated by the legislature. No question was raised, as here, as to whether the state had recouped the powers previously delegated to the city to do as it had done by its ordinance of 1869. Indeed, the powers so delegated to the cities of the state (B & C, §§ 5077, 5078), and upon which the city of Portland relied in 1869, have never been recalled by the legislature and still continue in substantially the same form as then. See ORS 772.105.

Sections 1 and 2 of ch 86, Oregon Laws 1947, relied upon by the railroad company as working a repeal of Salem ordinance 2566, provide:

"Section 1. The power to fix and regulate the speed of railway trains within the limits of cities and towns of less than 100,000 population is vested exclusively in the state.

"Section 2. Upon petition of any incorporated city or town or of any railroad or upon his own motion, the public utilities commissioner of Oregon shall, on behalf of the state, after due investigation and hearing, enter an order fixing and regulating the speed of railway trains within the corporate limits of cities and towns of less than 100,000 population. Any such order may relate to and include more than one such city or town or particular portions of any one or more cities and towns. The speed limits fixed by the commissioner shall be maximum speed limits and he may fix different rates of speed for different cities and towns or within different portions of any city or town, which rates of speed shall be commensurate with the hazards presented and the practical operation of the trains. When the conditions of hazard and the practical operation of trains require, the commissioner may, in the same order, prescribe the number, kind and location of warning signal devices and stop signs to be installed at grade crossings, and shall by his order require the same to be installed and determine the division of the cost of such installation and future mainte-

nance between the railroad and the state, county, municipality or other public authority in interest, in such proportion as he may deem just and reasonable in the circumstances and in accordance with the respective benefits to be derived by the railroad and the public."

In response to the argument of the railroad company that the act of 1947 has superseded the authority of the city of Salem in the premises, the appellant urges (1) that the public utilities commissioner has taken no action under the power vested in him by the act of 1947 and, therefore, the authority previously granted to the city of Salem continues to exist until some affirmative order is made by the commissioner; and (2) in the alternative, that the act of 1947, conferring on the commissioner power to regulate the speed of trains, is an unconstitutional delegation of legislative authority. Both propositions asserted by the appellant are without merit.

 An act of the legislature which is a general law applicable to all municipalities of the same class, in this instance to all with "less than 100,000 population", repeals by implication all charters and ordinances in conflict therewith. *Klamath Falls v. Oregon Liquor Comm.,* 146 Or 83, 92, 29 P2d 564. In *Burton v. Gibbons,* 148 Or 370, 379, 36 P2d 786, we said:

"* * * it is now settled that, within the limits prescribed by the other provisions of the state constitution and of the federal constitution, the power of the legislature to enact a general law applicable alike to all cities is paramount and supreme over any conflicting charter provision or ordinance of any municipality, city or town." (Citing numerous Oregon cases.)

Chapter 86 of Oregon Laws 1947 is such a general law. This is disclosed by the character of the subject matter

and more particularly by the language of § 1 reading: "The power to fix and regulate the speed of railway trains * * * *is vested exclusively in the state.*" (Italics ours.) The ordinary and generally accepted meaning of "exclusively", that is, the exclusion of all others from participation, gives to the act of 1947 a character of generality which, by implication, works a repeal of all municipal law on the same subject in municipalities of less than 100,000 population. Section 2 of chapter 86, providing that the act be administered by the public utilities commissioner, created an immediate conflict between the statute and all city ordinances regulating speed of trains in cities of less than 100,000 population.

By the act of 1947, the legislature so clearly and completely excised the powers theretofore delegated to the city of Salem with respect to the regulation of the speed of trains that it left no vestigial remainders of the city's previous authority which could be revived or invoked to and until the public utilities commissioner had substituted some regulation of his own to replace Salem ordinance 2566, if, indeed, the commissioner was bound, in the exercise of his discretion, to make some regulation with respect to the speed of trains as a substitute for the regulatory ordinances of municipalities which had been repealed by the act.

■ So far as the record in this case discloses, the commissioner, upon his own motion, may have investigated the matter of railroad speeds in the city of Salem and in every city in the state of Oregon with a population of less than 100,000 and concluded from his inquiry that the facts did not warrant a regulation establishing train speed within such areas. In the event such was his conclusion, then during the interim period between the repeal of such an ordinance as 2566 and the issuance

of a speed regulation by the commissioner, any negligent operation by the railroad chargeable to excessive speed would be responsive to applicable rules of the common law.

■ We are not impressed by appellant's argument that the investment of the public utilities commissioner with power to fix the rate of speed of railway trains traveling within the limits of cities and towns of less than 100,000 population is an unconstitutional delegation of legislative power and authority.

■ As its prime reason for this contention, appellant asserts that the commissioner is empowered to use his discretion with no provision for a guide or standard in determining speed limits. The necessity for prescribing guides and standards for the governance of an administrative agency to which powers have been delegated is settled law. *Wichita Railroad & L. Co. v. Public Utilities Commission,* 260 US 48, 59, 67 L ed 124, 43 SC 51; *Demers v. Peterson,* 197 Or 466, 470, 254 P2d 213; *City of Portland v. Welch,* 154 Or 286, 304, 59 P2d 228, 106 ALR 1188; *Van Winkle v. Fred Meyer, Inc.,* 151 Or 455, 49 P2d 1140.

■ The mere fact that an administrative authority is granted discretion in the exercise of power conferred upon it by a law does not necessarily demonstrate that the discretion amounts to a use of legislative power. Any power other than a legislative one which the legislature may exercise it may delegate. *Livesay v. De-Armond,* 131 Or 563, 573, 284 P 166, 68 ALR 422. In the same case we also said:

"* * * From this fact it necessarily follows that before a statute can be condemned as conferring legislative power upon an administrative body it must be evident that the power conferred is legislative. Hence, at this point it is desirable to recog-

nize the distinction between the delegation of power to make law or complete an incomplete act, and the conferring of authority upon a commission or official to administer a law in a manner that involves the exercise of administrative discretion. * * *''

Also see *State ex rel. v. Malheur County Court*, 185 Or 392, 419, 203 P2d 305.

Chapter 86 of the Laws of 1947 is clearly an act designed to delegate to the public utilities commissioner the power to ''complete an incomplete act * * * in a manner that involves the exercise of administrative discretion.'' It is the absence of guides and standards for the governance of the administrator's judgment that would impair its constitutionality. However, when we examine chapter 86 we find that the legislature has not only established the guides and standards for the commissioner but has likewise provided for the method of ascertaining proper information for establishment of the guides and standards necessary to control his action.

Section 2 of the act provides in part: ''* * * The speed limits fixed by the commissioner shall be maximum speed limits and he may fix different rates of speed * * * which rates of speed shall be commensurate with the hazards presented and the practical operation of the trains. * * *''

The proper information for his conclusions is dependent upon his observance of the condition precedent, likewise found in § 2 of the act. It is there mandated that his orders fixing and regulating speed are made only ''after due investigation and hearing''. It is then and there that he is supplied with information concerning ''the hazards presented'' and ''the practical operation of the trains.'' It is this information from whence come the guides and standards that con-

trol the commissioner's ensuing judgment as reflected
in his orders and regulations. Orders and regulations
predicated upon such procedures are not to be con-
demned as a delegation of legislative powers. *Stettler
v. O'Hara,* 69 Or 519, 535, 139 P 743, LRA 1917C 944,
Ann Cas 1916A 217.

In the particulars hereinafter indicated, the second,
third and fourth assignments of error all depart from
our rules governing the preparation of briefs on appeal.

■ The second assignment is predicated upon the
court's refusal to permit the appellant to show fre-
quent and numerous prior accidents involving the rail-
road company at or near the intersection of 12th and
State streets. As required by Rule 13 (A) 3a, it fails
to set forth haec verba or otherwise the question giving
rise to the objection made or the offer of proof, if any
was made.

Appellant's third assignment of error was directed
to the court's refusal to admit the statements of certain
witnesses said to have been made immediately after the
accident and on the theory that such statements were
a part of the res gestae. This assignment, too, fails to
meet the requirements of the same rule and in the
same particulars.

■ The fourth and last of appellant's claim of error
is addressed to the court's refusal to give 13 instruc-
tions requested by appellant. Here again the appellant
departs from the directions of Rule 13 by its failure
to set out the requested instructions haec verba as
required thereby.

■ The rules of this court are not designed to fur-
nish an excuse to escape a judicial duty; but, on the
other hand, they are intended, among other things, to
expedite the performance of our proper functions and
thereby minimize the delays of justice. These rules

thus serve not only the court but also the cause of the immediate parties before it and, insofar as the final disposition of a given case is hastened by a faithful adherence to their clear and simple directions, they enable the court to turn more quickly to the consideration of other appeals which await hearing.

Appellants who avoid the rules run the risk of having their assignments ignored. *Edvalson v. Swick,* 190 Or 473, 482, 227 P2d 183. Also see *Moran v. Bank of California,* 58 Oregon Advance Sheets 657, 269 P2d 524 (April 21, 1954). However, because of the circumstances peculiar to the instant appeal, we have taken notice of appellant's last three assignments, notwithstanding the irregularity of the form of their presentation; and after a careful examination of the record, we find that they are without merit.

Affirmed.