Argued and submitted October 26, 1983, affirmed May 9, reconsideration denied July 13, petition for review denied August 28, 1984 (297 Or 781)

STATE OF OREGON, by and through
the WATER RESOURCES DEPARTMENT,
*Appellant,*

*v.*

CITY OF KLAMATH FALLS,
*Respondent,*

*and*

CITIZENS FOR RESPONSIBLE GEOTHERMAL
DEVELOPMENT, INC.,
*Intervenor - Respondent.*

(81-914-1; CA A26792)

682 P2d 779

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Robert D. Boivin, Klamath Falls, argued the cause for respondent City of Klamath Falls. With him on the brief was Boivin & Boivin, P.C., Klamath Falls.

J. Michael Alexander, Salem, argued the cause for respondent Citizens for Responsible Geothermal Development, Inc. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

The State of Oregon, on behalf of the Water Resources Department, brought this action seeking a declaratory judgment that the City of Klamath Falls' Ordinance No. 6343 is invalid, because the state has preempted the field of regulation of ground water use. The trial court granted defendant-intervenor's motion for summary judgment on the preemption claim and denied the state's cross-motion. The state appeals from a judgment entered in favor of defendants. We affirm.

Ordinance No. 6343 was adopted by the citizens of Klamath Falls through the initiative process on June 30, 1981, and makes it unlawful to remove any geothermal fluid from any well unless the fluid is returned undiminished in volume to the same well.[1] The sole issue is whether the state has

---

[1] Ordinance No. 6343 provides:

"AN ORDINANCE PROVIDING FOR GEOTHERMAL RESOURCE DEVELOPMENT, LIMITING REMOVAL OF GEOTHERMAL OR GROUNDWATER FROM ITS SOURCE, PROVIDING PROTECTION FOR THE RIGHTS OF EXISTING USERS, AND PROVIDING FOR CONSERVATION AND MANAGEMENT OF THE GEOTHERMAL GROUNDWATER RESERVOIR WITHIN THE CITY OF KLAMATH FALLS, OREGON.

"THE CITY OF KLAMATH FALLS ORDAINS AS FOLLOWS:

"Section 1.

"It shall be unlawful for any person, corporation, organization, municipal corporation or any political subdivision of the State of Oregon to put into service any device, pump, well system or artesian source which will result in any geothermal water or fluid being removed from any well unless the water of [sic] fluid is returned undiminished in volume to the same well.

"Section 2.

"Notwithstanding Section 1 hereof, all persons who on January 1, 1981, are removing water or geothermal fluids from wells and who on said date are using said geothermal water or fluid for heating purposes shall be allowed to continue such use in the same manner which they presently enjoy. However, existing users will not be allowed to increase, enlarge or otherwise expand the quantity of geothermal water or fluid withdrawn unless it is in compliance with Section 1 of this Ordinance.

"Section 3.

"The Common Council of the City of Klamath Falls shall expeditiously enact legislative measures to ensure compliance with the provisions of this Ordinance. However, failure of the Common Council to act in a timely manner shall not invalidate any of the provisions of this Ordinance.

preempted the field of regulation of ground water resources, including geothermal resources, by enactment of the Ground Water Act of 1955, ORS 537.505 *et seq.*

In connection with some matters, including this one, state law may preclude a local government from legislating on the same subject, either because the legislature intended its law to be exclusive (that is, intended to preempt the field), or because both enactments cannot operate concurrently and the state law is intended to be paramount. *See LaGrande/Astoria v. PERB,* 281 Or 137, 148, 576 P2d 1204, 284 Or 173, 586 P2d 765 (1978). Generally, the legislature may indicate its intention by: (1) expressly providing that the state shall have exclusive authority; (2) expressly providing that state and local governments shall have concurrent authority; or (3) making no provision whatsoever. When the legislature has chosen to employ the third method, the Supreme Court stated in *LaGrande/Astoria:*

> "* * * It is * * * reasonable to assume that the legislature does not mean to displace local civil or administrative regulation of local conditions by a statewide law unless that intention is apparent. * * *" 281 Or at 148-49. (Footnote omitted.)

The state contends that legislative intent to vest exclusive authority in the state is apparent from reports of the Water Resources Committee, established to make "specific recommendations regarding the formulation of a statewide coordinated system of water resource development," Or Laws 1953, ch 658, § 4, from the policy of the Ground Water Act, as set forth in ORS 537.525, and from the powers given to the Water Resources Director to implement the provisions of the Act. Although the statutory provisions and legislative history of the Ground Water Act are material to our determination of

---

"Section 4.

"The following definitions apply in this Ordinance:

"GEOTHERMAL WATER - Water of sufficient temperature and volume for use in any system used for heating purposes.

"HEATING PURPOSES - Includes the use of geothermal fluids for residential, commercial and industrial beneficial purposes.

"WELL - any excavation, cavern, hold or shaft or other breaking of the surface of the ground which results in the accumulation of geothermal fluid therein or a flow therefrom whether assisted by any mechanical device."

legislative intent, because that act is part of a broader statutory scheme involving ORS ch 536, governing the administration of water resources generally and the creation of the Water Resources Board and its director, we must construe the two acts together.

ORS ch 536 establishes the Department of Water Resources, ORS 536.008, the Water Policy Review Board, ORS 536.014, and the position of Water Resources Director, ORS 536.032. ORS 536.220 sets forth state policy regarding water resources generally and provides, in part:

"(1)(b) A proper utilization and control of the water resources of this state can be achieved only through a coordinated, integrated state water resources policy, through plans and programs for the development of such water resources and through other activities designed to encourage, promote and secure the maximum beneficial use and control of such water resources, all carried out by a single state agency.

"(c) The economic and general welfare of the people of this state have been seriously impaired and are in danger of further impairment by the exercise of some single-purpose power or influence over the water resources of this state or portions thereof by each of a large number of public authorities, and by an equally large number of legislative declarations by statute of single-purpose policies with regard to such water resources, resulting in friction and duplication of activity among such public authorities, in confusion as to what is primary and what is secondary beneficial use or control of such water resources and in a consequent failure to utilize and control such water resources for multiple purposes for the maximum beneficial use and control possible and necessary.

"(2) The Legislative Assembly, therefore, finds that it is in the interest of the public welfare that a coordinated, integrated state water resources policy be formulated and means provided for its enforcement, that plans and programs for the development and enlargement of the water resources of this state be devised and promoted and that other activities designed to encourage, promote and secure the maximum sources and the development of additional water supplies be carried out by a single state agency which, in carrying out its functions, shall give proper and adequate consideration to the multiple aspects of the beneficial use and control of such water resources with an impartiality of interest except that designed to best protect and promote the public welfare generally."

Although the import of ORS 536.220 is clearly to promote an integrated and coordinated state program of water resource development, ORS 536.310 mandates that the board consider the following additional policy:

> "(11) Local development of watershed conservation, when consistent with sound engineering and economic principles, is to be promoted and encouraged."

ORS 536.360 states that public corporations[2] shall "give due regard to the statements of the board and shall conform thereto" and that no exercise of any power, duty or privilege by any public corporation "which would tend to *derogate from or interfere with* the state water resources policy shall be lawful." (Emphasis supplied.) It thus suggests that only those exercises of local authority which conflict with established state policy are unlawful. That interpretation of the statute is reinforced by ORS 536.370:

> "(1) No exercise by any * * * public corporation of this state which has received a copy of a state water resources policy statement as provided in ORS 536.350 of any power, duty or privilege * * * which would in any way *conflict with the state water resources policy as set forth in the statement,* shall be effective or enforceable until approved by the Board * * *." (Emphasis supplied.)

Both ORS 536.360 and 536.370 thus provide that, once state policy has been formulated and disseminated, local authorities must conform thereto. Until such time as the state acts, however, local authorities appear to be free to develop their own policy regarding water resource development. Moreover, even after the state has acted, local authorities may presumably take action consistent with state policy.[3]

It is against the backdrop of the provisions of ORS ch 536 regarding local authority to regulate water resource development generally that we examine the history and provisions of the Ground Water Act of 1955, ORS 537.505 *et seq.* The

---

[2] "Public Corporation" is defined in ORS 536.210(2) as including "any city, county or district organized for public purposes."

[3] Once a public corporation has received a copy of state policy, however, it must file with the board a notification of any proposed exercise, which the board may review. ORS 536.380. ORS 536.390 provides that the board may by agreement, order, rule or regulation approve the exercise of powers by public corporations without the filing of notification as provided in ORS 536.380(1).

state contends that the reports of the Water Resources Committee, which drafted legislation that culminated in the Ground Water Act, and the general policy of the Act, support an interpretation of that Act as vesting exclusive authority in the state to regulate the use of ground water resources. In its final report to the legislature, the Water Resources Committee concluded "that the most immediate needs in order to achieve a coordinated system of water resources development are:

> "1. A central agency authorized to execute a single water policy and resolve conflicts with regard to water use, and
>
> "2. An adequate ground water code applicable to the entire state and correcting the deficiencies of the present act." Summary, Report of Water Resources Committee, submitted to the Forty-eighth Legislative Assembly, January, 1955."

The policy of the Ground Water Act is set forth in ORS 537.525:

> "The Legislative Assembly recognizes, declares and finds that the right to reasonable control of all water within this state from all sources of water supply belongs to the public, and that in order to insure the preservation of the public welfare, safety and health it is necesary that:
>
> "(1) Provision be made for the final determination of relative rights to appropriate ground water everywhere within this state and of other matters with regard thereto through a system of registration, permits and adjudication.
>
> "(2) Rights to appropriate ground water and priority thereof be acknowledged and protected, except when, under certain conditions, the public welfare, safety and health require otherwise.
>
> "(3) Beneficial use without waste, within the capacity of available sources, be the basis, measure and extent of the right to appropriate ground water.
>
> "(4) All claims to rights to appropriate ground water be made a matter of public record.
>
> "(5) Adequate and safe supplies of ground water for human consumption be assured, while conserving maximum supplies thereof for agricultural, commercial, industrial, recreational and other beneficial uses.

"(6)    The location, extent, capacity, quality and other characteristics of particular sources of ground water be determined.

"(7)    Reasonably stable ground water levels be determined and maintained.

"(8)    Depletion of ground water supplies below economic levels, impairment of natural quality of ground water by pollution and wasteful practices in connection with ground water be prevented or controlled within practicable limits.

"(9)    Whenever wasteful use of ground water, impairment of or interference with existing rights to appropriate surface water, declining ground water levels, interference among wells, overdrawing of ground water supplies or pollution of ground water exists or impends, controlled use of the ground water concerned be authorized and imposed under voluntary joint action by the Water Resources Director and the ground water users concerned whenever possible, but by the director under the police power of the state when such voluntary joint action is not taken or is ineffective.

"(10)    Location, construction, depth, capacity, yield and other characteristics of and matters in connection with wells be controlled in accordance with the purposes set forth in this section."

The state also contends that the Water Resources Director has been given plenary authority to implement the provisions of the Act. In addition to the powers and duties specified in ORS 537.780,[4] the director may (1) determine who

---

[4] ORS 537.780 provides:

"In the administration of ORS 537.505 to 537.795, the Water Resources Director may:

"(1) Require that all flowing wells be capped or equipped with valves so that the flow of ground water may be completely stopped when the ground water is not actually being applied to a beneficial use.

"(2) Prescribe and enforce general standards for the construction and maintenance of wells and their casings, fittings, valves and pumps, and special standards for the construction and maintenance of particular wells and their casings, fittings, valves and pumps.

"(3) Prescribe and enforce uniform standards for the scientific measurement of water levels and of ground water flowing or withdrawn from wells.

"(4) Enter upon any lands for the purpose of inspecting wells, including wells exempt under ORS 537.545, casings, fittings, valves, pipes, pumps and measuring devices.

has the right to appropriate ground water and resolve disputes as to such rights, ORS 537.605-537.610, ORS 537.615-537.622; (2) issue permits to appropriate ground water, issue ground water rights certificates and issue licenses to ground water well contractors, ORS 537.625, 537.630, 537.747; (3) identify and define the characteristics of each ground water reservoir in this state, ORS 537.665; (4) determine priorities among appropriators, issue orders as to serviceable methods of withdrawal, make rules controlling the use of ground water from each reservoir and make rules for the construction, operation, and protection of wells that are deemed necessary to protect the public health, safety and welfare, ORS 537.670; (5) declare critical ground water areas, define their boundaries and specify corrective control measures, ORS 537.730-537.740; (6) encourage, promote and recognize voluntary agreements among ground water users from the same ground water reservoir, ORS 537.745; (7) impose conditions on the use of ground water wells as deemed necessary to abate wasteful use of ground water, interference with other wells or the pollution of ground or surface water supplies, ORS 537.775, and (8) regulate the controlling works and distribution of ground water whenever necessary to assure compliance with the Act,

---

"(5) Prosecute actions and suits to enjoin violations of ORS 537.505 to 537.795, and appear and become a party to any action, suit or proceeding in any court or before any administrative body when it appears to the satisfaction of the director that the determination of such action, suit or proceeding might be in conflict with the public policy expressed in ORS 537.525.

"(6) Call upon and receive advice and assistance from the Environmental Quality Commission or any other public agency or any person, and enter into cooperative agreements with any such public agency or person.

"(7) Promulgate and enforce such rules as the director deems necessary to facilitate and assist in carrying out functions under ORS 537.505 to 537.795. Such rules include, but are not limited to rules governing:

"(a) The form and content of registration statements, certificates of registration, applications for permits, permits, certificates of completion, ground water right certificates, notices, proofs, maps, drawings logs and licenses;

"(b) Procedure in hearings held by the director or an authorized assistant; and

"(c) The circumstances under which the helpers of persons operating well drilling machinery may be exempt from the requirement of direct supervision by a licensed water well constructor.

"(8) In accordance with applicable law regarding search and seizure, apply to any court of competent jurisdiction for a warrant to seize any well drilling machine used in violation of ORS 537.747 or 537.753."

rules promulgated thereunder or the fair and equal distribution of water according to the rights of various users. Finally, under ORS 537.783 he is empowered to adopt rules governing the disposal by reinjection or other method of geothermal fluids derived from wells that are within the statutory definition.[5]

The foregoing statutory provisions clearly express an overall public policy and interest in controlling the appropriation of ground water and set forth a uniform system to effectuate that policy. Although the statute vests considerable authority in the director to establish rules, specify corrective measures and impose conditions, the statutory and regulatory scheme cannot be read as *expressly* prohibiting local bodies

---

[5] ORS 537.783 provides:

"(1) The Water Resources Director shall adopt rules which govern the disposal by reinjection or other means of geothermal fluids derived from:

"(a) Geothermal or hot water wells less than 2,000 feet deep producing fluids of less than 250 degrees Fahrenheit bottom hole temperature; or

"(b) Geothermal or hot water wells less than 2,000 feet deep producing fluids that have been appropriated pursuant to ORS 537.505 to 537.795.

"(2) The rules adopted under subsection (1) of this section shall include standards whereby contamination may be determined, construction standards for reinjection wells, testing procedures for identifying aquifers, standards and procedures for determining whether adjacent aquifers are being degraded by the reinjection process, guidelines for conservation of the resource, criteria for evaluating reservoirs or zones for geothermal fluid disposal and requirements for prior approval of all geothermal fluid reinjection proposals.

"(3) A water pollution control facilities permit shall be obtained from the Department of Environmental Quality under ORS 468.740 before reinjection is commenced. The Department of Environmental quality may, by agreement with the Water Resources Director, waive this requirement for reinjection into the reservoir from which the fluid came where adequate standards and tests have been adopted to insure the fluid and its residues are uncontaminated."

ORS 522.019(2) provides:

"The State Department of Geology and Mineral Industries shall adopt rules which govern the disposal by reinjection or other means of geothermal fluids derived from geothermal resources from wells of 250 or more degrees Fahenheit bottom hole temperature or wells 2,000 or more feet deep. The rules shall include standards whereby contamination may be determined, construction standards for reinjection wells, testing procedures for identifying aquifers, standards and procedures for determining whether adjacent aquifers are being degraded by the reinjection process, guidelines for conservation of the resource, criteria for evaluating reservoirs or zones for geothermal fluid disposal and requirements for prior approval of all geothermal fluid reinjection proposals."

The state appears to challenge the city's authority to enact the ordinance only on the basis that ORS ch 537 preempts local regulation.

from engaging in regulatory activity of their own that is not inconsistent with the statute or agency regulations. Indeed, such an interpretation would render local authorities powerless to effectuate any regulation of ground water resources even in the absence of action by the director and would contravene the policy considerations expressed in ORS ch 536 regarding the role of local authorities in the administration of water resources generally. Because the legislature could have, but did not, expressly manifest an intent to preclude any local regulation, *see, e.g., Fischer v. Miller,* 228 Or 54, 363 P2d 1109 (1961); *So. Pacific Co. v. Con. Freightways,* 203 Or 657, 281 P2d 693 (1955), we conclude that the state has not preempted the field, although we think it is clear that the legislature intended that state law, when implemented by the director, be paramount, at least with respect to ground water. Accordingly, local authorities are free to adopt regulations which are not inconsistent with the state statutory scheme. *See State ex rel Haley v. City of Troutdale,* 281 Or 203, 211, 576 P2d 1238 (1978).

We turn to the question of whether Ordinance No. 6343 is incompatible with the Ground Water Act "because both enactments cannot operate concurrently." *LaGrande/ Astoria v. PERB, supra,* 281 Or at 148. In *Terry v. City of Portland et al,* 204 Or 478, 492, 269 P2d 544 (1954), the Supreme Court quoted with approval from 37 Am Jur, *Municipal Corporations,* § 165, at 787:

" '* * * [I]n determining whether the provisions of a municipal ordinance conflict with a statute covering the same subject, the test is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits.

" '* * * Thus, where both an ordinance and a statute are prohibitory and the only difference between them is that the ordinance goes further in its prohibition, * * * there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective.' "

ORS 537.783 provides that the director shall adopt rules governing the disposal of geothermal fluids "by reinjection or other means." Ordinance No. 6343 requires reinjection of geothermal fluids undiminished in volume to the same well

from which they were removed. The ordinance is thus consistent with the statute insofar as method of disposal is concerned, but is more restrictive, apparently as a conservation measure, in requiring that fluids be returned to the same well undiminished in volume. Those additional requirements are consistent with the policy guideline enunciated in ORS 537.525(3) that "beneficial use without waste" is the basis of the right to appropriate ground water.[6] Although the ordinance is more restrictive than the statute, we see no reason why the two cannot operate concurrently in the absence of an agency rule governing disposal in a manner inconsistent with that required by the ordinance.

Clearly, under ORS 537.783, the director is given authority to promulgate rules and regulations regarding the disposal of geothermal fluids.[7] If regulations are established, local plans that conflict with those regulations must fall under the paramount state law. Until such time as the director acts, however, there is no reason to prohibit the operation of local plans that creatively foster water resource development and conservation consistent with the state policy.[8]

Affirmed.

---

[6] We reject the state's suggestion that the ordinance regulates appropriation by prohibiting those uses which do not allow reinjection of fluid into the same well undiminished in volume. Although any measure to conserve a resource may necessarily have some effect on its appropriation, the ordinance in question in no way interferes with the power of the director to control appropriation by issuing permits, adopting rules and doing other things within his authority.

[7] As of the time of the initial hearing on this matter, the director had only proposed administrative rules under ORS 537.783. The trial court found Ordinance No. 6343 to be consistent with those proposed rules.

[8] Our holding is not inconsistent with *So. Pacific Co. v. Con. Freightways,* 203 Or 657, 664-65, 281 P2d 695 (1955), which held that a state statute vesting *exclusive* authority to regulate the speed of trains in the Public Utilities Commissioner invalidated a local ordinance regulating train speed, even though the commissioner had not exercised his statutory authority.