Argued and submitted December 19, 1996, affirmed January 29, 1997

Stuart LINDQUIST,
*Petitioner,*

*v.*

CLACKAMAS COUNTY
and Richard Noble,
*Respondents.*

(LUBA No. 96-055; CA A95229)

932 P2d 1190

William Dickas argued the cause for petitioner. With him on the brief was Kell, Alterman & Runstein, L.L.P.

Michael E. Judd, Chief Assistant County Counsel, argued the cause for respondent Clackamas County. With him on the brief was Clackamas County Counsel.

No appearance for respondent Richard Noble.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Petitioner seeks review of LUBA's memorandum opinion affirming Clackamas County's denial of his application to locate a residential dwelling not provided in conjunction with farm use (nonfarm dwelling) in an exclusive farm use (EFU) zone. We affirm.

ORS 215.284(1) provides:

"(1)   In the Willamette Valley, a single-family residential dwelling not provided in conjunction with farm use may be established, subject to approval of the [county] governing body or its designate, in any area zoned for exclusive farm use upon a finding that:

"(a)   The dwelling or activities associated with the dwelling will not force a significant change in or significantly increase the cost of accepted farming or forest practices on nearby lands devoted to farm or forest use;

"(b)   The dwelling will be sited on a lot or parcel that is predominantly composed of Class IV through Class VIII soils that would not, when irrigated, be classified as prime, unique, Class I or Class II soils;

"(c)   The dwelling will be sited on a lot or parcel created before January 1, 1993;

"(d)   The dwelling will not materially alter the stability of the overall land use pattern of the area; and

"(e)   The dwelling complies with such other conditions as the governing body or its designate considers necessary."[1]

In 1993, through Oregon Laws 1993, chapter 792, section 14, the legislature extensively amended ORS 215.283(3) *et seq*, the provisions pertaining to nonfarm dwellings in EFU zones. In the aftermath, the amended provisions were recodified at ORS 215.284. The 1993 amendments deleted ORS 215.283(3)(d) (1991), which made a proposed

---

[1] ORS 215.284 contains six subsections and covers more than a full page of the printed Oregon Revised Statutes. For purposes of our discussion, it suffices to quote subsection (1). The length and substance of the remainder of the statute are nevertheless indicative of the legislature's exacting approach to the allowance of nonfarm dwellings in agricultural areas.

location's "general unsuitability" for farm uses one of the criteria for allowing a nonfarm dwelling. Clackamas County's zoning ordinance also included a general unsuitability test for such dwellings. However, the county did not change that portion of the ordinance after the statute was amended. In denying petitioner's application, the county applied the general unsuitability provision and other provisions of its ordinance, in addition to the standards of ORS 215.284.

Petitioner relies on *Brentmar v. Jackson County*, 321 Or 481, 900 P2d 1030 (1995), and argues that the county erred by applying the local ordinance provisions in general and the general unsuitability provision in particular. LUBA disagreed, and so do we. We discussed *Brentmar* at some length in *Nichols v. Clackamas County*, 146 Or App 25, 932 P2d 1185 (1997), and we will limit our description of the Supreme Court's opinion here to those aspects of it that immediately affect this case. In general outline, the court held in *Brentmar* that the nonfarm uses allowable in EFU zones by ORS 215.213(1) and ORS 215.283(1) are "uses as of right," which are not subject to county regulations that go beyond those set forth in the statutes. On the other hand, according to *Brentmar*, the uses described in ORS 215.213(2) and ORS 215.283(2) are conditional and may be subjected to county regulations and approval standards that supplement the statutory provisions.

Petitioner and the county both rely selectively on language in *Brentmar* to aid their positions. Petitioner notes that one of the contextual statutes that the court in *Brentmar* cited as supporting the distinction that it ultimately drew was ORS 215.296(10), which provides in part:

"Nothing in this section shall prevent a local governing body approving a use allowed under ORS 215.213(2) or 215.283(2) from establishing standards in addition to those set forth in subsection (1) of this section * * *."

The court in *Brentmar* appeared to attach some significance to the fact that no comparable authority was given counties by ORS 215.296(10) to adopt additional standards in connection with the uses enumerated in ORS 215.213(1) and ORS

215.283(1). 321 Or at 487-88. Petitioner notes that ORS 215.296(10) similarly makes no mention of ORS 215.284.[2]

The county responds that the more important basis that the court relied on in *Brentmar* for the distinction that it made between subsection (1) and subsection (2) uses was that subsection (2) provides that the establishment of the uses is "subject to the approval of the [county] governing body or its designate." 321 Or at 488, 491. The county points out that ORS 215.284(1) contains similar language.

■ We agree with the county that the language in ORS 215.213(2) and ORS 215.283(2) that it quotes, and which is also materially duplicated in ORS 215.284(1), was the principal textual and contextual underpinning for the court's holding in *Brentmar* that, unlike ORS 215.213(1) and ORS 215.283(1), the subsection (2) uses were not "of right" and *were* subject to supplemental county regulation. Accordingly, the county's argument lends strong support to the conclusion it urges us to reach that it had authority to apply the "supplemental" general unsuitability provision and other provisions of its ordinance here.

In addition, there is another reason supporting the same conclusion. In *Brentmar*, the court held that the text and context of the statutes were not decisive, and it therefore proceeded to analyze legislative history. Here, by contrast, the text and context *are* conclusive. ORS 215.284(1)(e) includes among the permissible bases for approving or disapproving a nonfarm dwelling:

"The dwelling complies with such other conditions as the governing body or its designate considers necessary."

Hence, *this* statute by its terms authorizes county regulatory standards that are not included in the statute itself.

Although petitioner makes the point in a slightly different connection, he observes that ORS 215.284(1)(e) states only that "dwellings" are subject to additional conditions

---

[2] Also of some significance is the fact that the standards in ORS 215.296(1) are highly similar to those in ORS 215.284(1)(a).

established by counties. However, he contends that the statute does not provide that "uses" are subject to such additional conditions. Petitioner explains:

> "The difference may be dramatic. 'Dwelling' conditions concern set-backs, sanitation, access, fire safety, etc., all of which [under county legislation] are, of course, still applicable. 'Use' conditions, however, are defined by the Act."

We do not agree with petitioner's distinction. At the times when what is now ORS 215.284(1)(e) was enacted and when it was amended by the 1993 legislature, it was part of ORS 215.283(3). ORS 215.283 was and is concerned generally with "uses" in EFU zones, and it contains specific provisions that include certain "dwellings" and residences among the "uses." *See, e.g.*, ORS 215.283(1)(f), ORS 215.283(2)(n). In that context, it seems clear that the nonfarm dwellings regulated by subsection (3) *et seq* of the same statute are also "uses" within its meaning. Stated differently, "dwellings" are simply one of the many kinds of "uses" to which the relevant statutes pertain.[3]

█ Petitioner also argues that the county regulations are preempted by the state statutes, as amended in 1993. *Brentmar* makes it plain, however, that not *all* local regulation of uses in EFU zones is impermissible, and ORS 215.284(1)(e) makes it explicit that the legislature has permitted some local regulation of nonfarm dwellings in EFU zones; therefore, the legislature has not "occupied the field." Petitioner also does not succeed in the other demonstration by which preemption can be shown, *i.e.*, that the local legislation prohibits what the state legislation permits or permits what the state legislation prohibits. Petitioner's main effort at such a demonstration is that the 1993 amendments deleted the statutory "general unsuitability" test, which the county has retained in its ordinance. However, especially given the express authority that the statute gives counties to devise additional conditions and its provision that the allowance of nonfarm dwellings is subject to county approval, we

---

[3] Nonfarm dwellings had been regulated by subsection (3) *et seq* and its precursors for many years before the 1993 amendments to those provisions were adopted.

find no inconsistency between the general unsuitability standard and those that the amended statute establishes or leaves in place. The general unsuitability and other county standards here supplement and complement the state provisions in ways that are fully compatible with the statutes. For example, the general unsuitability standard of the ordinance comports with and supplements the limitation in ORS 215.284(1)(b) on the quality of soils where nonfarm dwellings may be located.

■■    It bears noting that the repeal and replacement of a statutory provision containing a particular substantive regulation does not necessarily indicate a legislative intent to displace local regulations of comparable substance. *See City of Portland v. Jackson*, 316 Or 143, 850 P2d 1093 (1993). We find no indication that the legislature intended the 1993 amendments to ORS 215.283(3) *et seq* to have such an effect on the county's general unsuitability standard.[4]

Petitioner's specific contentions do not persuade us. Its specifics aside, there are two implicit overriding themes to petitioner's argument. The first is that the 1993 amendments liberalized the preexisting statutory standards for allowing nonfarm dwellings on agricultural land. That may be, but it does not follow that nonfarm dwellings were thereby converted into a favored use, or one that is beyond local legislative regulation that supplements state law. ORS 215.284, viewed in its entirety, demonstrates that nonfarm dwellings retain their pre-1993 legislative status as one of—if not the most—stringently regulated of nonfarm uses in EFU zones. *See* note 1.

Petitioner's second implicit theme is that *Brentmar* effects a generalized shift in the law, under which *all* proposed nonfarm uses in EFU zones are to be viewed more

---

[4] One other specific argument of petitioner's warrants brief mention. He argues that the county is required by ORS 197.646 to apply the 1993 state legislation. That is of course true, but petitioner appears to regard that as a prohibition against the application of local provisions that predated the 1993 amendments, even if they are consistent with the new state provisions. The county answers, correctly, that ORS 197.646 requires local governments to incorporate new state provisions into their local legislation and to comply with new state requirements, but it does not prohibit the existence or application of local legislation that supplements the state requirements.

favorably, and are to be less subject to local regulation than was the case before the Supreme Court decided *Brentmar*. However, *Brentmar* has no such generalized effect. Rather, it is an interpretation of *particular* statutes, two of which—ORS 215.213(1) and ORS 215.283(1)—were construed by the court as creating "uses as of right," while two others—ORS 215.213(2) and ORS 215.283(2)—were construed as not creating such "outright permitted" uses and as allowing supplemental county regulation. For the reasons that we have discussed, there is no tenable basis for concluding that ORS 215.284 should be construed in the way that ORS 215.213(1) and ORS 215.283(1) were interpreted in *Brentmar*.

We have considered petitioner's other assignment and arguments and reject them without discussion.

Affirmed.