Argued and submitted December 21, 1998, reversed and remanded in part; otherwise affirmed June 28, 2000

ASHLAND DRILLING, INC.,
Darryl Baker, Richard Fujas, Elizabeth Fujas
and Oregon Ground Water Association,
*Appellants,*

*v.*

JACKSON COUNTY,
Cliff S. Bentz, John Frewing, Anita Johnson,
Nancy Leonard, Michael Jewett, Tyler Hansel,
Commissioners of the
Oregon Water Resources Commission,
acting in their personal capacities,
and Martha O. Pagel, Director,
acting in her personal capacity,
*Respondents.*

(95-5149-E2; CA A101416)

4 P3d 748

Garry P. McMurry argued the cause and filed the briefs for appellants.

Steven R. Rinkle, Assistant County Counsel, argued the cause for respondent Jackson County. With him on the brief was Arminda J. Brown, Jackson County Counsel.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondents Cliff S. Bentz, John Frewing, Anita Johnson, Nancy Leonard, Michael Jewett, Tyler Hansel, Commissioners of the Oregon Water Resources Commission,

and Martha O. Pagel, Director of Oregon Water Resources Department. With her on the brief were Hardy Myers, Attorney General, and Michael G. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

Deits, C. J., concurring.

---

\* Deits, C. J., *vice* Warren, J., retired.

## WOLLHEIM, J.

Plaintiffs[1] appeal a judgment granting defendants' motions for summary judgment. Plaintiffs requested both declaratory and injunctive relief against the Water Resources Commission (state) and Jackson County (county) under the Declaratory Judgment Act, ORS 28.010, and under ORS 28.080. The trial court held that the Oregon Ground Water Act of 1955 (Act) did not preempt two Jackson County ordinances and granted summary judgment in favor of the state and county. Plaintiffs appeal, asserting: (1) that the trial court erred in holding that ORS 537.769 does not expressly preempt Jackson County's ordinances; and (2) that the trial court erred in concluding that the ordinances are not inconsistent with, and thereby are not preempted by, the Water Resources Commission's statutory powers and administrative rules on the subject of water wells, well constructors and well testing. Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are disputed questions of material fact and whether the moving parties were entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). On review of the record, there are no disputed issues of material fact. Because the trial court had no jurisdiction over plaintiffs' claims against the state defendants, we affirm the judgment in favor of the state. On the merits of plaintiffs' appeal against the county, we affirm in

---

[1] Oregon Ground Water Association (OGWA) is a named plaintiff. However, it is a trade association that merely "represents the interests of ground water users, well constructors, pump installation contractors, hydro-geologists, and well testers in Jackson County and the State of Oregon." In every case, we must examine whether a justiciable controversy exists, and a plaintiff's standing is germane to whether a justiciable controversy exists under ORS chapter 28. *Lone Oak Racing, Inc. v. Oregon Racing Commission*, 162 Or App 111, 118, 986 P2d 596 (1999). Therefore, we must examine OGWA's standing even though no party has raised the issue. *Id.* In *Oregon Taxpayers United PAC v. Keisling*, 143 Or App 537, 544, 924 P2d 853, *rev den* 324 Or 488 (1996), *cert den* 520 US 1252 (1997), we held that "ORS 28.020 does not allow an organization to assert the rights of its members." OGWA seeks to do just that; therefore we hold that OGWA, as a named plaintiff, does not have standing.

Darryl Baker and his company, Ashland Drilling, Inc., are licensed well constructors doing business in Jackson County, and Richard and Elizabeth Fujas are Jackson County well owners. When we refer to "plaintiffs," we refer only to those parties.

part, reverse in part, and remand for proceedings not inconsistent with this opinion.

The Act was Oregon's first comprehensive and statewide ground water legislation. ORS 537.505 to ORS 537.795 and ORS 537.992. The Act established a system for the statewide appropriation of ground water by permit and charged the Water Resources Commission and Water Resources Department (collectively, the "commission") with administering that program and regulating ground water use. ORS 537.535. The Act exempts from the permit requirements, that apply to ground water appropriation, uses of ground water for some particular purposes, such as stock watering and other small domestic, commercial and industrial uses. ORS 537.545. The Act provides for the designation of critical ground water areas. ORS 537.730. It authorizes regulation of all wells, including otherwise exempt wells, if they are found by the nature of their "construction, operation or otherwise" to be causing wasteful use of ground water, interfering with other wells or polluting ground or surface water. ORS 537.775. *See also* ORS 537.545(4) (if located in a ground water management area, "exempt" users must obtain ground water appropriation permit).

This appeal primarily concerns whether the legislature intended to preempt local regulation of activities concerning ground water wells. The inquiry focuses on the Act's "start card" provisions, described in more detail below. Generally, the start card program, ORS 537.747 to ORS 537.795 and ORS 537.992, regulates the construction and inspection of ground water wells and regulates water well constructors. In 1989, the legislature enacted ORS 537.769, which provides:

> "The Legislative Assembly finds that ground water protection is a matter of statewide concern. No ordinance, order or regulation shall be adopted by a local government to regulate the inspection of wells, construction of wells or water well constructors subject to regulation by the Water Resources Commission or the Water Resources Department under ORS 537.747 to 537.795 and 537.992."

In 1994, Jackson County adopted ordinance 94-89, codified as sections 00.040, 5.14, 16.020, 20.030, and 280.110(3) of the

county's Land Development Ordinance (LDO), and ordinance 94-90, codified in chapter 1880 of the Codified Ordinances of Jackson County (JCC). Those ordinances both address ground water wells. The gravamen of plaintiffs' complaint against the state and the county rests on their assertion that either ORS 537.769 or the commission's statutory powers preempt those ordinances, either in whole or in part. The trial court granted defendants' motions for summary judgment, concluding that ORS 537.769 did not preempt local control over ground water wells.

■ We begin with the state defendants. Generally, plaintiffs sought a judgment against the state declaring that the commission had failed to implement the start card program by failing to undertake specific enforcement and implementation actions. Plaintiffs also sought a mandatory injunction requiring the commission to implement ORS 537.769. Having found for both the state and county defendants on the preemption issue, the trial court did not address the state's two alternate arguments in its favor, that plaintiff's claims are barred by the exclusive remedy provision of the Administrative Procedures Act (APA), and, in the alternative, that plaintiffs' claims are not otherwise cognizable under the Declaratory Judgment Act because plaintiffs have requested specific relief that is committed to agency discretion by law. Plaintiffs argue that their claims were properly pleaded under the Declaratory Judgment Act, because it provides that the courts "shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." ORS 28.010. Additionally, plaintiffs argue that their requests for injunctive relief were properly based on ORS 28.080, which provides that "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper." We conclude that the trial court did not have jurisdiction to consider plaintiffs' claims against the state.

We agree with the state's assertion that the claims should have been brought under the APA. We have held that "when APA review is available, APA jurisdiction is exclusive." *Lake County v. State of Oregon*, 142 Or App 162, 166, 920 P2d 1115 (1996). That is a two-part requirement.

■ First, we have held that plaintiffs must exhaust their administrative remedies before they may request judicial relief through the Declaratory Judgment Act. *Isom v. P.G.E.,* 67 Or App 97, 102, 677 P2d 59 (1983), *rev den* 297 Or 272 (1984); *Bay River v. Envir. Quality Comm.,* 26 Or App 717, 721, 554 P2d 620, *rev den* 276 Or 555 (1976). *See also Lone Oak Racing, Inc. v. Oregon Racing Comm.,* 162 Or App 111, 122-23, 986 P2d 596 (1999) (no jurisdiction under Declaratory Judgment Act where plaintiff failed to exhaust administrative remedy under APA). Accordingly, APA review is available where administrative remedies are available. Second, we have held that the APA "establishes a comprehensive pattern for the judicial review of administrative decisions" and provides the "sole and exclusive means of obtaining judicial review." *Bay River,* 26 Or App at 720. Thus, when there is an administrative remedy, review of that remedy is exclusively under the APA. *Lucas v. ODOT,* 168 Or App 593, 4 P3d 745 (2000).

Accordingly, we must examine whether administrative remedies exist for the relief requested by plaintiffs in this declaratory relief action. In particular, plaintiffs seek a judgment stating that the commission has "failed and refused to implement the 'Start Card' program" by: (1) failing to issue water resource statements pursuant to ORS 536.300 explaining its inspection program; (2) failing to advise local jurisdictions to avoid violating ORS 537.769; (3) failing to abate enforcement of the county's ordinances; and (4) fostering the development and adoption of local ordinances in violation of ORS 537.769.

■ ORS 183.490 provides an administrative remedy for plaintiffs' action. That statute provides that "[t]he court may, upon petition as described in ORS 183.484, compel an agency to act where it has unlawfully refused to act or make a decision or unreasonably delayed taking action or making a decision." That statute facially pertains to an agency's nonfeasance in refusing to or delaying an act or in refusing to make or delaying a decision. *See Bay River,* 26 Or App at 722, 723 (ORS 183.490 is designed to review "an agency's failure to make an order on the merits" and therefore to compel an agency "to proceed with greater alacrity."); *accord Mendieta v. Division of State Lands,* 148 Or App 586, 598, 941 P2d 582

(1997), *rev dismissed* 328 Or 331 (1999). Plaintiffs were required to proceed under ORS 183.490[2], and their action is barred by the APA.

■ Even if ORS 183.490 does not apply to plaintiffs' case, plaintiffs' claims are also not cognizable under the Declaratory Judgment Act. Under the Declaratory Judgment Act, a court can declare what a statute means. *See Clatsop County v. LCDC,* 47 Or App 377, 379, 614 P2d 612 (1980) (considering facial challenge to the constitutionality of statute under declaratory judgment jurisdiction). Under ORS 28.080, a court may require action to conform with that declaration. Here, plaintiffs have requested that a court declare that the Act requires the commission to enforce and implement the Act by (1) issuing water resources statements; (2) advising local jurisdictions to avoid violating ORS 537.769; (3) abating enforcement of the county's ordinances; and (4) discouraging the development of local ordinances. Plaintiffs are thus asking for a declaration that the commission has specific and mandatory responsibilities to act to preempt local regulation under ORS 537.769. We conclude, however, that the Act vests the commission with considerable discretion to enforce and implement the Act.

■ While the commission "shall * * * [a]dminister and enforce the laws of the state concerning the water resources of this state," ORS 536.037, ORS 537.780 provides only that in the administration of the Act and the "start card" program, the commission *"may"* undertake particular implementation and enforcement actions. (Emphasis added.) Plaintiffs seek to have us override the legislature's delegation of discretion to the commission by declaring that the commission *must*

---

[2] It is unclear from plaintiffs' pleadings or briefs whether plaintiffs' request that the state issue "water resources statements" is a request for the state to promulgate "rules" under the APA. If the water resources statements are "rules," ORS 183.390 would bar plaintiffs' prayer for the issuance of water resources statements under the Declaratory Judgment Act. Under ORS 183.390, a party may petition an agency to promulgate, amend, or repeal a rule. Within 30 days after submitting the petition, the agency must either issue an order denying the petition or initiate rulemaking procedures. If the agency refuses to act on that petition, ORS 183.490 would govern jurisdiction of the judicial remedy, not the Declaratory Judgment Act. *See Bay River*, 26 Or App at 723. In any event, plaintiffs' request regarding the water resources statements are barred by the exclusive remedy provision of the APA.

undertake particular enforcement actions. That we cannot do. Courts will not interfere by declaratory judgment or injunctive relief with the discretionary power vested in an agency, unless some compelling reasons exist. *Gurdane et al. v. No. Wasco Co. P. U. D.*, 183 Or 565, 580, 195 P2d 171 (1948). We do not assume that the commission "will, in the absence of an injunction, refuse to follow the law as we have stated it." *Burke v. Children's Services Division*, 288 Or 533, 548, 607 P2d 141 (1980).

Again, even if the APA did not bar plaintiffs' claims, plaintiffs have not alleged any compelling reason for us to interfere in this case. For example, there is no indication that the agency is abrogating its duty to implement or enforce the Act that may warrant judicial interference. We would decline to interfere with the commission's discretionary choices in implementing the Act. Similarly, we would conclude that none of plaintiffs' claims is cognizable under the Declaratory Judgment Act, because the legislature has committed to the commission's discretion selection of implementation and enforcement actions.

For the reasons discussed, we affirm the trial court's judgment in favor of the state defendants.

We turn to the county defendants and plaintiffs' arguments that the county's ordinances are expressly or implicitly preempted by state law. We begin by describing the most relevant portions of the state statutes and local ordinances. The two county ordinances are almost identical. The ordinances impose a permit and fee requirement for the construction of wells in the county and impose well location requirements. The permit must be signed by the property owner or the owner's legally authorized representative. The county requires the filing of a "plot plan" after completion of the well a water quality test for each new and deepened well, and assesses a fee for that water quality test. The ordinances regulate certain aspects of well "flow" tests conducted in the county. In addition, the LDO contains deed notification requirements for final map or plat approval and authorizes the county to designate "areas of special concern" within areas where well water quantity and quality problems exist, "pursuant to a public hearing." LDO § 280.110(3).

In general, the state's start card program (1) imposes a licensing requirement on those who construct ground water wells, ORS 537.747; (2) imposes a bond obligation on well constructors, ORS 537.753; (3) requires submission of a $75 fee and notice of imminent well construction (start card) before construction of the well by contracted, licensed well constructors, ORS 537.762; (4) requires all well constructors to submit a well log after completion of the well, ORS 537.765; and (5) requires a 10-year well "pump" test for all nonexempt use wells, ORS 537.772. The program also requires landowners to record information regarding a well in the deed to the property, ORS 537.788, and gives the commission various other implementation and enforcement powers, ORS 537.775 to ORS 537.787. In particular, ORS 537.780 enumerates the commission's powers and authority in the administration of the entire Act, including the start card program. As earlier described, ORS 537.769 prohibits local regulation of well inspection, well construction and well constructors that are subject to regulation by the commission under the start card program. ORS chapters 536 and 537 also provide the commission with a broad range of powers and responsibilities in the management of surface and ground water resources.

In their complaint, plaintiffs sought a declaratory judgment that ordinance 94-89 and ordinance 94-90 are void, because ORS 537.769 expressly preempts them and vests exclusive control of water wells in the commission. Alternatively, plaintiffs sought a declaration that the ordinances are preempted to the extent they are inconsistent with the commission's statutory powers and administrative rules on the subject of water wells, well constructors, and well testing. Plaintiffs requested injunctive relief prohibiting enforcement of the ordinances. On appeal, plaintiffs assign error to the trial court's conclusion that the ordinances are not preempted in whole or in part by state law.

We have considered whether this case comes within the circuit court's jurisdiction or is exclusively within the jurisdiction of the Land Use Board of Appeals, ORS 197.825, and we conclude that the circuit court had jurisdiction. *See Scappoose Sand and Gravel, Inc. v. Columbia County*, 161 Or App 325, 330-32, 984 P2d 876, *rev den* 329 Or 528 (1999).

On the merits, plaintiffs raise a challenge to the facial validity of the county's enactments. Our first inquiry, therefore, is whether the challenged enactments are valid as written, as opposed to as applied. *Advocates for Effective Regulation v. City of Eugene,* 160 Or App 292, 299, 981 P2d 368 (1999). Because there are no factual disputes, we focus on whether the prevailing party was entitled to judgment as a matter of law. *Doe v. American Red Cross,* 322 Or 502, 505, 910 P2d 364 (1996).

In *LaGrande/Astoria v. PERB,* 281 Or 137, 576 P2d 1204 (1978), the Supreme Court articulated the framework under which we evaluate state preemption of local regulation. The question here is

> "whether the local rule in truth is incompatible with the legislative policy, either because both cannot operate concurrently or because the legislature meant its law to be exclusive. It is reasonable to interpret local enactments, if possible, to be intended to function consistently with state laws, and equally reasonable to assume that the legislature does not mean to displace local civil or administrative regulation of local conditions by a statewide law unless that intention is apparent." *Id.* at 148-49 (footnote omitted).

That inquiry acknowledges the "home rule" authority of local governments[3] to enact reasonable regulation to further local interests in public health, safety, and welfare. *City of Eugene v. Miller,* 318 Or 480, 491 n 12, 871 P2d 454 (1994). In general, where local governments have undertaken reasonably to regulate matters of local health, safety, and welfare, such regulation will be valid unless we determine that the local regulation conflicts with state law or is clearly intended to be preempted.

Here, we focus first on whether the legislature clearly intended ORS 537.769 to preempt Jackson County's ordinances. *See LaGrande/Astoria,* 281 Or at 148-49. That intention is apparent if it is expressly or otherwise clearly manifested in the language of the statute; the scope of any preemption is also measured by the statutory language. *See Boytano v. Fritz,* 321 Or 498, 505-07, 901 P2d 835 (1995). If

---

[3] *See* Or Const, Art IV, § 1(5); Or Const, Art XI, § 2.

we find an express or otherwise clearly manifested intention that the state's legislation is to be exclusive, we need go no further.

 If we find no express or otherwise clear manifestation of preemption, we must examine whether the ordinances "cannot operate concurrently" with state law. *LaGrande/Astoria*, 281 Or at 148. The relevant question is whether the ordinances "conflict" with state law, *i.e.*, that the local legislation prohibits what the state legislation permits or permits what the state legislation prohibits. *Accord City of Portland v. Jackson*, 316 Or 143, 146-47, 850 P2d 1093 (1993); *Lindquist v. Clackamas County*, 146 Or App 7, 12, 932 P2d 1190 (1997). We begin with a presumption against preemption of local regulation. Indeed, "[w]e cannot simply 'assume' that, *by its silence,* the legislature intended to *permit* conduct made punishable under an ordinance." *Jackson*, 316 Or at149 (emphasis in original). Rather,

> " 'we first must examine the ordinance and statutes that the parties claim are in conflict. Next, we determine what conduct the ordinance prohibits. Third, we look to see whether the applicable statute or statutes *permit* that conduct, either by an express legislative decision, by a decision apparent in the legislative history, or otherwise. If the ordinance prohibits conduct that the statute permits, the laws are in conflict and the ordinance is displaced under Article XI, section 2 [of the Oregon Constitution].' " *City of Eugene v. Kruk,* 128 Or App 415, 417, 875 P2d 1190 (1994) (quoting *Jackson,* 316 Or at 151) (emphasis in *Jackson*).

The first question is whether ORS 537.769 expressly or otherwise clearly preempts the county's ordinances. We begin by considering whether that statute preempts all local regulation of ground water. We examine the text and context of the statute to determine the legislature's intent, and, if we find ambiguity, we examine legislative history. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993). We find that the text and context of the statute are clear, not ambiguous, and therefore we do not resort to legislative history.

 We have once before answered the question of whether the Act preempts all local regulation of ground

water. In *Water Resources Dept. v. City of Klamath Falls,* 68 Or App 148, 151-52, 682 P2d 779, *rev den* 297 Or 781 (1984), we construed the Act in the context of the "broader statutory scheme involving ORS ch[apter] 536, governing the administration of water resources generally." We noted that ORS chapter 537 expresses "an overall public policy and interest in controlling the appropriation of ground water and set[ting] forth a [statewide] uniform system to effectuate that policy." *Id.* at 157. We noted also that ORS chapter 536 specifically permits concurrent regulation by local authorities that is consistent with state laws. *Id.* at 153. We therefore concluded that

"[b]ecause the legislature could have, but did not, expressly manifest an intent to preclude any local regulation, * * * the state has not preempted the field, although we think it is clear that the legislature intended that state law, when implemented by the [Water Resources] director, be paramount, at least with respect to ground water. Accordingly, local authorities are free to adopt regulations which are not inconsistent with the state statutory scheme." *Id.* at 158.

The legislature has since added ORS 537.769, which states, in part:

"No ordinance, order or regulation shall be adopted by a local government to regulate the inspection of wells, construction of wells or water well constructors subject to regulation by the Water Resources Commission or the Water Resources Department under ORS 537.747 to 537.795 and 537.992."

Accordingly, we consider whether ORS 537.769 provides the express manifestation, lacking in *City of Klamath Falls,* to prohibit all local regulation of ground water. The statute declares "[n]o ordinance, order or regulation shall be adopted by a local government to *regulate*" the specific topics. "Regulate" is defined as "to govern or direct according to rule * * *: to bring under the control of law or constituted authority * * *." *Webster's Third New Int'l Dictionary,* 1913 (unabridged ed 1993). Thus, regulations can prohibit or restrict activities or impose obligations that would not be present without that authority. ORS 537.769 regulates the power of local governments. By stating that "[n]o ordinance, order or regulation" may be adopted "to regulate," the statute places

an absolute prohibition on some local regulation. However, that does not end the inquiry.

■ The essence of the county's argument is that ORS 537.769 preempts only local regulation that *conflicts* with the statute; however, the legislature knows how to indicate such a meaning when it intends to include that limitation. *Compare City of Portland v. Sunseri,* 66 Or App 261, 265, 673 P2d 1369 (1983) (legislation stating Liquor Control Act "shall be paramount and superior to and shall fully replace and supersede any and all municipal charter enactments or local ordinances inconsistent with it"); *with State ex rel Haley v. City of Troutdale,* 281 Or 203, 210, 576 P2d 1238 (1978) (legislation stating "no municipality shall enact or enforce any ordinance, rule or regulation in conflict" with state building code). ORS 537.769 lacks any language expressly stating that local legislation is preempted only if it conflicts with state law. We are "not to insert what has been omitted, or to omit what has been inserted." ORS 174.010.

The legislature has created a unique regulatory scheme in the Act. While ORS 537.769 expressly prohibits any local government regulation, that absolute prohibition is nevertheless limited to certain subjects—"the *inspection* of wells, *construction* of wells or *water well constructors.*" (Emphasis added.) That prohibition is further narrowed to activities associated with those particular subjects that are also "*subject to* regulation by the * * * [commission] under ORS 537.747 to 537.795 and 537.992." (Emphasis added.) It therefore is not tenable to argue that ORS 537.769 expressly prohibits all local regulation of ground water.

Rather, we compare the prohibition with each of the various ordinances. Activities pertaining to well inspection, well construction, and water well constructors that are subject to regulation under the start card program fall within the express preemption. We therefore examine whether the activities regulated by the challenged local ordinances are also subject to regulation under the start card program as the regulation of well construction, well inspection or water well constructors. That approach gives effect to the legislature's express intention to avoid duplicative regulatory authority regarding those topics at the local level. *See Advocates for*

*Effective Regulation,* 160 Or App at 299. If we find duplication, we must inquire no further and must conclude that the ordinance is expressly preempted by ORS 536.769.

If we find no duplication, we then must undertake the second inquiry: whether the ordinance otherwise conflicts and is incompatible with the commission's statutory authority and its administrative rules on the subject of water wells, well constructors, and well testing. We address each of the challenged provisions separately.

■ We first address plaintiffs' claims concerning the county's permit provisions. The county prohibits any "person" from "caus[ing] or allow[ing] construction or deepening of any water well without first obtaining a well drilling permit from Jackson County." LDO § 5.140.2; JCC § 1880.18. The permit is issued only to the land holder, easement holder, or to an authorized agent. The permit application must be accompanied by the appropriate fee.[4] Approval of the permit is contingent on compliance with the ordinances and with well location requirements.

The permit fee is, by the county's own characterization, "for the act of locating and drilling a well." Thus it regulates the "construction of wells." Plaintiffs assert, and the county does not dispute, that the fee applies to the administrative expenses of the permit, county inspections, and water quality testing programs. The start card program assesses a similar fee. ORS 537.762(5). That fee accompanies the start card, is based on the act of well construction, and is thus a regulation of well construction. The state fee similarly goes to pay the administrative expenses of the commission, as well as to pay for the employment of well inspection personnel. ORS 537.763. Thus, the start card program, like the county program, assesses a fee on the act of constructing a well and applies the fee to similar kinds of expenses. We therefore conclude that the county's permit fee is expressly preempted as a regulation of well construction.

■ We next consider plaintiffs' arguments that the county permit itself impinges on the state's exclusive power

---

[4] We address separately the fee assessed in conjunction with the county's water quality testing provisions.

to regulate "construction of wells" under the start card program. By prohibiting *any person* from causing or allowing construction of a well until a permit is obtained and by requiring compliance with its ordinance provisions, the county regulates whether a well may be constructed.[5] The permit requirement is therefore a regulation of well construction. We conclude that the commission has been given exclusive authority over that form of regulation of well construction in the start card program. First, ORS 537.753(4) imposes a pre-construction permit requirement on owners who are constructing a well. Thus, the commission exercises authority over whether a well may be constructed in the owner-constructor circumstance. Because the county's pre-construction permit provisions apply to owner-constructors as well as to contracted, licensed well constructors (who are regulated under other provisions of the start card program), the county's provisions are expressly preempted by ORS 537.753(4) as a regulation of the construction of wells.

To avoid confusion over the scope of the legislature's preemption, we examine the Act's regulation of contracted, licensed water well constructors, and we conclude that a pre-construction permit requirement on contracted, licensed well constructors, while not expressly preempted, is inconsistent with state law.

ORS 537.762 does not impose a permit requirement on well construction by contracted, licensed water well constructors. It requires a pre-construction report, or start card, but the commission has no approval authority. Rather, the report acts as notification that some activity regarding well construction has begun. The county argues that the state, in the instance of contracted, licensed well constructors, therefore does not regulate whether a well can be constructed by those well constructors as an initial matter.[6] However, under

---

[5] We address the county's well location provisions separately below.

[6] We note that the commission's *enforcement* authority, under ORS 537.762(4) and ORS 537.780(1)(b)(A), which may result in the prohibition of well construction, is distinct from an authority empowering the commission to approve, as an initial matter, the commencement of well construction. In addition, ORS 537.780(1)(h)(A) permits the commission to adopt rules *governing* permits in the administration of the entire Act. ORS 537.780(1)(h)(A) does not provide separate authority for *imposing* such permits on contracted, licensed well constructors. *Compare* ORS 537.753(4) (legislature granted the commission authority to permit the construction of wells by owner-constructors).

our second line of inquiry, we conclude that the county's construction permit requirement is inconsistent with state law, because the legislature purposefully omitted a permit requirement on the construction of wells by contracted, licensed well constructors. The legislature granted to the commission the authority to regulate the appropriation of ground water "through a system of registration, permits and adjudication." ORS 537.525(1); *see also* ORS 537.780(1)(h)(A) (empowering the commission to adopt rules governing permits). Thus, the commission has general authority to permit various activities and to adopt rules governing the administration of those permits. Yet, the fact that the legislature set up a comprehensive *nonpermit* notification procedure in the start card program indicates its intention not to require permits for well construction from licensed well constructors. The county permit ordinance provisions are thus incompatible with state law and are preempted as a regulation of the construction of wells.[7]

We next examine whether the county provisions regarding the location of ground water wells are regulations of "construction of wells" also subject to regulation under ORS 537.747 to ORS 537.795 and ORS 537.992. We conclude that they are. The county argues in essence that the term "construction" pertains only to the drilling, driving, jetting, boring, and digging of the hole and to the materials used in the well, not to the location of the well. We find no support for the county's argument in the text or context of the statute. *Webster's Third New Int'l Dictionary* at 489 defines "construction" as "the form or manner in which something has been put together." That definition is broad enough to encompass both the activities the county lists and the location for digging the well. ORS 537.775(3) also provides for the definition of well "setback[s] * * * in the well construction rules adopted by the commission," thus revealing the legislature's belief that well location requirements are indeed well construction regulations.

---

[7] Because we hold that the county's permit provisions are preempted, we find it unnecessary to consider plaintiffs' arguments that the county permit signature provisions are preempted. Those provisions fall along with the permit provisions.

In addition, ORS 537.775(3), in conjunction with ORS 537.762(1)(b), ORS 537.765(3)(b) and ORS 537.780(1)(c)(A), leaves little doubt that well location requirements are subject to regulation by the commission. ORS 537.762(1)(b) requires that the start card contain information about the "approximate location of the proposed well." The well log requirement, under ORS 537.765(3)(b), requires similar information. ORS 537.780(1)(c)(A) empowers the commission in the administration of those provisions to adopt and enforce standards for the construction of wells "necessary to protect the ground water resources." Indeed, the commission's "well construction standards" are designed to locate wells away from likely sources of contamination. *See* OAR 690-210-0030 (well setback requirements from septic tanks, sewage disposal areas, hazardous waste sources, livestock operations, and others). ORS 537.775(3) specifically mandates compliance with those standards in the permanent abandonment of old wells due to water quality problems. The start card program has therefore specifically focused on construction standards in the form of well setback regulations that are necessary to protect ground water resources from contamination. Thus, the location of wells is subject to regulation under the start card program, and the county's well location provisions are expressly preempted as a regulation of well construction.

We next consider the county's provisions requiring submission of a plot plan. The county requires that, within ten days after completion of the well, "the well constructor shall submit an accurate plot plan showing the location of the well and distances to property lines, septic tanks and drainfields, sewer lines, wells within 100 feet, and any other significant natural or constructed features." LDO § 5.140.3(h); JCC § 1880.19(h). We conclude that the county's plot plan submission requirement is expressly preempted as a regulation of well constructors, because it duplicates the start card program's well log requirement under ORS 537.765.[8] The

---

[8] ORS 537.765 states, in part:

"(1) * * * any person * * * constructing, altering, abandoning or converting a well, shall keep a log of each well constructed, altered, abandoned or converted and shall furnish a certified copy of the log to the Water Resources Commission within 30 days after the completion of the construction, alteration, abandonment or conversion.

county argues that its plot plan requirement requests different information than the state's well log and that the requirement is, therefore, neither incompatible nor duplicative of the authority vested in the commission through the start card program. We do not agree. While the county does request some different information, its focus is to ascertain the actual location of the well. The state's well log also requests well location information. The legislature chose to regulate the reporting requirements of water well constructors, and it also chose to require them to report the location of the well after construction. Thus, we conclude that the county regulates activities that are subject to regulation under the start card program, and the plot plan ordinance provisions are expressly preempted as a regulation of water well constructors.

■■ We also conclude that the county's well "flow" test ordinance provisions are expressly preempted. The county requires (1) that any person conducting a well "flow" test, including licensed water well constructors, be "authorized" by the county; (2) that the person conducting the test follow the well "flow" test procedures adopted by the county; and (3) that all authorized well yield testers submit copies of the well "flow" test to the county. LDO § 5.140.5; JCC § 1880.21. First, the state program clearly regulates the licensing of water well constructors. ORS 537.750. Further, in the administration of that licensing authority, ORS 537.780(1)(h)(A) empowers the commission to adopt standards for that license. Those standards can, and in fact do, require knowledge of well testing techniques. *See* OAR 690-217-0050 (licensed water well constructors are qualified to conduct well "pump" tests according to acceptable techniques). Because the county includes licensed well constructors in its authorization program and because that authorization program duplicates the authority of the commission to license water well constructors under the start card program, we

---

"* * * * *

"(3) Each log required under subsection (1) of this section shall * * * show: [in part, name and address of well owner and constructor, location of the well, dates of construction, depth, diameter and type of well, kind and amount of casing, flow of water, static water level, kind and material of strata penetrated, and temperature of ground water.]"

conclude that the provisions are preempted as a regulation of water well constructors.

Second, we note that the county's well "flow" test procedures are regulations on "inspection of wells."[9] We examine the well log and well "pump" test requirements[10] in the start card program along with ORS 537.780 and conclude that those county regulations are preempted. Under the well log requirement, the commission requires information on water levels and water flow. ORS 537.765(3)(f-g). In the administration of those provisions, ORS 537.780(1)(c)(A) and ORS 537.780(1)(d) empower the commission to adopt standards for the maintenance of wells and thereby to "enforce uniform standards for the scientific measurement of water levels and of ground water flowing or withdrawn from wells." Under the "pump" test requirement, the commission requires the completion of such a test and the reporting of the test results, including information on certain parameters of the testing. Thus, well "flow" testing standards are subject to regulation under the start card program to ensure uniform measurement and reporting for the maintenance of wells. We conclude that the county's testing procedures are expressly preempted as a regulation of well inspection.

We next examine the county's well "flow" test reporting provisions. Again, we note that the provisions are regulations on well inspection because they prescribe how the county is to receive information on an inspection of the function of a well. Similarly, the state's well "pump" test governs the receipt of information on an inspection of the function of a well. ORS 537.772 requires that the owner or operator conduct and *report* the results from its well pump test. Therefore, we conclude that the county's well "flow" test reporting provisions are expressly preempted as a regulation of well inspection.

---

[9] The county defines a "flow test" as "procedure for pumping water from a well for a specified period of time to establish well yield and/or basic ground water quantity information." LDO § 00.040.

[10] OAR 690-217-0010(6) defines a well "pump" test as "[a] controlled procedure in which water is withdrawn from a well at a constant rate for a specified period of time and in which the water level in the well is measured at specified intervals before, during and after pumping."

 We next turn to the county's water quality testing provisions. We conclude that the county's provisions do not regulate well construction, well inspection or water well constructors. A water quality test is plainly not a regulation of well construction. In contrast to its well "flow" test provisions, the county's water quality testing provisions are not a regulation of the inspection *of wells*. ORS 537.515(9) defines a well, in part, as "any artificial opening or artificially altered natural opening * * * by which ground water is sought or through which ground water flows under natural pressure or is artificially withdrawn." Examining the flow of water through a well is necessarily an examination of the opening seeking to retrieve that water. An examination of the water's quality is a different matter, because it does not necessarily involve an examination of the function or make up of the well itself. Moreover, while the state imposes a regulation on well constructors requiring them to provide water samples to the commission upon its request, ORS 537.765(4) does not specify that well constructors provide those samples for water quality tests. In contrast, the county simply requires that the quality of water from new and deepened wells be tested *by a certified laboratory*, not by water well constructors, and that the results of those tests simply be submitted to the county. LDO § 5.140.4(a); JCC § 1880.20(a). Therefore, the county's water quality testing requirements do not impose regulations on water well constructors that are subject to the commission's statutory authority under the start card program. We conclude that the county's water quality testing provisions are not expressly preempted.

 Under our second line of inquiry, there is no reason to conclude that the water quality test requirement is incompatible with state law. The county requires each new and deepened well to be tested for total coliform bacteria, nitrate, arsenic, fluoride, sodium, and chloride. The results of the test must be submitted to the county, and they are available to the public and for use in ground water data analysis. LDO § 5.140.4; JCC § 1880.20. Plaintiffs present a list of state provisions with which the ordinances allegedly conflict: ORS 537.525; ORS 537.545(2); ORS 537.765(4). Again, ORS 537.765(4) requires only that a water sample be furnished by the well constructor to the commission upon its request. ORS

537.545(2) requires that any person using ground water for exempt purposes provide information on the ground water and its use upon the commission's request. However, plaintiffs do not point to any statement or provision that indicates that the commission is the sole authority for testing ground water quality or that the legislature intended those measures to be the exclusive means for ensuring water quality. Additionally, ORS 537.525(11) contemplates that "[a]ll activities in the state that affect the quality or quantity of ground water shall be consistent with the state's ground water quality goal set forth in ORS 468B.155." Indeed, OAR 690-210-0020 expressly recognizes that the commission's water well construction standards "may not produce water of suitable quality for use as public, community, municipal, or public utility supplies. Regulations administered by other agencies may apply in addition to those in this Chapter." We conclude that the county's water quality test provisions, therefore, are not incompatible with state law.

▪▪▪ We similarly conclude that the county's water quality testing fee is not preempted. Like the water quality test provisions themselves, the water quality testing fee is not a regulation of well inspection, well construction, or water well constructors. In addition, plaintiffs have not identified any provision within the start card program that the county's water quality testing fee duplicates, nor is any apparent. Plaintiffs merely argue that the water quality testing fee is otherwise incompatible with the Act's provisions exempting certain water uses from the ground water appropriation permits. However, ORS 537.545, a provision to which ORS 537.769 does not refer, expressly contemplates commission regulation of those exempt use wells. That can include water quality regulation and may require costs incidental to that regulation. Plaintiffs have not identified how the county's water quality testing fee operates in conflict with the commission's regulatory authority over exempt use wells. Thus, plaintiffs have failed to demonstrate that the county's water quality testing fee ordinance provisions are preempted.

▪▪▪ We next reject plaintiff's arguments that the county's ordinance provision regarding deed notification is preempted. The county's deed notification requirement, LDO § 5.140.6, provides that sufficient evidence be supplied

showing that the individual lots proposed for creation by partition or subdivision will have available a 2.5 gallon per minute supply of potable water. If that amount of water is not available, in order to receive county approval of the partition or subdivision, a restrictive covenant must be recorded in the deed description. However, only the *applicant* for map or plat approval by the county is required to comply. Likewise, the state requires only the owner of the property on which a well is drilled to record specific information in the property deed records. ORS 537.788. Thus, the county's regulations are not a regulation of water well constructors that are subject to regulation by the commission under the start card program. Nor are they duplicative regulatory authority over well construction or well inspection.[11]

■ Finally, plaintiffs argue that the provision permitting the county, "pursuant to public hearing," to designate "lands within groundwater problem areas" as "areas of special concern" is incompatible with the Act. LDO § 280.110(3). In those designated areas, the ordinance requires the testing of "well capacity and water potability." *Id.* The ordinance next states that "greater care must be taken" where "potable water quality or quantity problems have occurred." *Id.* The ordinance further requires that the test results be submitted

> "in conjunction with land use or division permit applications, for parcels [so] designated * * *. Applications for *land use permits or divisions* shall be denied where minimum quantity and quality standards, as established in Section 5.140, are not satisfied unless mitigating measures acceptable to the County are proposed to ensure safe and adequate water supply." *Id.* (emphasis added).

Plaintiffs point out that the Act permits the commission, by rule, to designate critical ground water areas if it finds water quantity or quality issues. ORS 537.730 through ORS 537.740. The commission is empowered to impose several conditions necessary to protect the quality and quantity of ground water. ORS 537.735(3). Further, after designating by rule an area as a "critical ground water area, the commission may initiate a contested case proceeding to limit the use

---

[11] Plaintiffs do not argue that the deed notification requirement is otherwise inconsistent with state law.

of ground water in the area * * *." ORS 537.742(1). Plaintiffs do not argue that, under the Act, the commission is the only government entity that can use the regulatory *mechanism* of designating land areas based on water issues. However, plaintiffs point out that ORS 537.780(2)(a) specifically prohibits the commission from restricting ground water use unless the rule is based on substantial evidence in the record to justify the imposition of restrictions. Plaintiffs argue only that the county's ability, under this ordinance, to designate such areas "pursuant to public hearing" without a requirement for substantial evidence derogates the policy embodied in ORS 537.780(2)(a).

We might agree with plaintiffs if the county's ordinance were drawn to regulate the *use* of ground water. Indeed, in its contested case proceedings, the commission is empowered "to limit the use of ground water" by, among others, apportioning or reducing the permissible total withdrawal of water. ORS 537.742. The "substantial evidence" requirement of ORS 537.780(2)(a) likewise pertains to "rule[s] restricting ground water *use*." (Emphasis added.) Allowing local governments to restrict the use of ground water, without showing by substantial evidence that the restrictions are justified would derogate "restrict the force of"—the Act. *Webster's Third New Int'l Dictionary* at 609. However, the county's ordinance is not directed at limiting the use of ground water, itself. Rather, it is included solely in the LDO, and it directly restricts only the use of land: again, only "[a]pplications for *land use permits or divisions* shall be denied where minimum quantity and quality standards * * * are not satisfied." (Emphasis added.) The fact that the restriction on the use of land is predicated on ground water quality or quantity concerns and that the land use decision may affect the actual use of ground water is not consequential because the only regulatory action the ordinance permits the county to undertake is to approve or deny a land use permit or land use division proposal. It simply does not authorize the county directly to restrict the use of ground water, and that is the only activity prohibited by ORS 537.780(2)(a) without "substantial evidence."

In sum, we hold that the APA bars plaintiffs' claims against the state defendants. We hold that ORS 537.769 does

not expressly preempt all local regulation of well construction, well inspection, and well constructors. We hold that the county ordinances' permit fee provisions, permit well location provisions, plot plan submission provisions, and well flow test provisions are expressly preempted by ORS 537.769. We further hold that the county ordinances' well construction permit provisions are preempted, in part expressly and also as incompatible with state law. And finally, we hold that the county ordinances' water quality test provision, water quality fee provisions, deed notification provisions, and "areas of special concern" provision are not preempted by state law.

Judgment in favor of county reversed as to plaintiffs, other than Oregon Ground Water Association, with respect to ordinance 94-89 and ordinance 94-90 permit fee provisions, permit well location provisions, plot plan submission provisions, well flow test provisions, and well construction permit provisions; remanded with instructions to enter judgment in favor of plaintiffs, other than Oregon Ground Water Association, with respect to the latter provisions and dismissing claims of Oregon Ground Water Association for lack of standing and for further proceedings; otherwise affirmed.

**DEITS, C. J.,** concurring.

In my opinion, it is doubtful that the legislature intended to preempt the authority of local governments to regulate groundwater wells in the manner that the county has attempted to do in Ordinances 94-89 and 94-90. As the state and county assert, the purpose of those local ordinances is a matter of legitimate local concern and the ordinances involve objectives that are quite different from that of the state regulatory authority. Nonetheless, as the majority concludes, the text and context of ORS 537.769 do not provide a basis to limit the preemptive effect of the statute on local authority in the manner that the county desires. Accordingly, I must concur with the majority opinion with respect to plaintiffs' claims against the county defendants.